905 A.2d 340

PHILIP MORRIS USA, INC., et al.

v.

Nona K. CHRISTENSEN, et al.

No. 68, Sept. Term, 2005.

Court of Appeals of Maryland.

Aug. 4, 2006.

Robert C. Heim (Joseph Patrick Archie of Dechert L.L.P., Philadelphia, PA, James K. Archibald of Venable L.L.P., Baltimore), for Philip Morris USA, Inc., for Petitioners.

Edward J. Lilly (Theodore M. Flerlage of Law Offices of Peter G. Angelos, Baltimore), on brief, for Respondents.

Michael B. Minton, Bruce D. Ryder, Thompson Coburn L.L.P., St. Louis, MO, Edward C. Schmidt, Thompson Coburn L.L.P., Washington, D.C., and Kathleen M. McDonald, Kerr McDonald, L.L.P., Baltimore, Attorneys for Lorillard Tobacco Company.

Kathleen M. McDonald, Kerr McDonald, L.L.P., Baltimore, Attorneys for Giant Food L.L.C., Crown Service, Inc., George J. Falter Co., Inc., and A & A Candy Tobacco Company.

Aaron H. Marks, Nancy Straub, Kasowitz, Benson, Torres & Friedman, L.L.P., New York, NY, Deborah L. Robinson, Peter A. Woolson, Robinson Woolson, P.A., Baltimore, Attorneys for Liggett Group, Inc.

Hugh F. Young, Jr., Esq., Product Liability Advisory Counsel, Inc., Reston, VA, Robert Dale Klein, Esq., Michelle R. Callender, Esq., Wharton Levin Ehrmantraut & Klein, P.A., Annapolis, for amicus curiae Brief of the Product Liability Advisory Counsel, Inc.

Denis C. Mitchell, Esq., Stein, Mitchell and Mezines, Washington, D.C., for amicus curiae Brief of Maryland Trial Lawyers Association.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

This case concerns the statute of limitations and whether the commencement of a class action suspends the applicable statute of limitations as to asserted members of the class who would have been parties had the suit been permitted to continue as a class action. We are presented with two issues. First, in a matter of first impression before this Court, we must determine whether, and under what circumstances, the pendency of a putative class action tolls the statute of limitations for the members of the putative plaintiff class who are not named plaintiffs in the action. We shall affirm the judgment of the Court of Special Appeals on this issue, and hold that the pendency of a putative class action tolls the statute of limitations on the causes of action asserted in the class action complaint for the putative plaintiff class members, but only when the class action complaint gives the defendants in the class action complaint fair notice of the claims of the putative class member who claims the benefits of tolling.

Second, we must determine whether the Court of Special Appeals was correct in vacating the trial court's grant of summary judgment in favor of petitioner Giant Food, LLC ("Giant") against respondents and remanding the case to the Circuit Court for reconsideration of this issue in light of *Benjamin v. Union Carbide,* 162 Md.App. 173, 873 A.2d 463 (2005). We granted certiorari in this case and affirmed the Court of Special Appeals in *Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59, 904 A.2d 511 (2006). Accordingly, we shall vacate the judgment of the Court of Special Appeals on this issue, and remand the case to the Court of Special Appeals with instructions to vacate the Circuit Court's grant of summary judgment in favor of Giant, and to remand the case to the Circuit Court for reconsideration of this issue in light of our opinion in *Georgia–Pacific.*

I.

On August 13, 2001, respondent Nona Christensen ("Ms. Christensen"), in her individual capacity and in her capacity as the personal representative of her deceased husband, Russell Christensen ("Mr. Christensen"), brought a survival and wrongful death action against petitioners. In her complaint, Ms. Christensen alleged causes of action for strict liability for failure to warn, fraudulent misrepresentation, and civil conspiracy. She sought to recover compensatory and punitive damages, including damages for loss of consortium. On September 25, 2002, the complaint was amended to add Mr. Christensen's adult children, Lowell Christensen and Lisa Marie Christensen, as plaintiffs.

Petitioners Philip Morris USA Inc., Lorillard Tobacco Co., and Liggett Group, Inc. are manufacturers of cigarette products. Petitioners Giant, Crown Service, Inc., George J. Falter Co., Inc., and A & A Tobacco Company, Inc. are involved in the distribution and sale of cigarette products.

With the exception of Giant, petitioners were all defendants in a prior putative class action suit filed in the Circuit Court for Baltimore City, which was before us on a petition for a writ of mandamus in *Philip Morris v. Angeletti*, 358 Md. 689, 752 A.2d 200 (2000).[1] In that case, we explained the procedural history of the litigation of the *Philip Morris* class action litigation as follows:

"On May 24, 1996, [the named plaintiffs] filed a complaint in the Circuit Court for Baltimore City against all manufacturers of tobacco and their Maryland distributors, as well as two industry trade groups and a marketing and public relations firm, the majority of whom have jointly filed the petition now before this Court. Seeking both compensatory and punitive damages as well as injunctive relief, [the named plaintiffs] assert claims on behalf of themselves and

---

1. For convenience, we shall refer to *Philip Morris v. Angeletti*, 358 Md. 689, 752 A.2d 200 (2000) as the *"Philip Morris* class action," and to the class of petitioners who were defendants in this case as the *"Philip Morris* petitioners."

all similarly situated Maryland residents (a) who have suffered or continue to suffer from physical injuries or disease caused by smoking cigarettes or using smokeless tobacco products, and/or (b) who are nicotine dependent and plead addiction as an injury. [The named plaintiffs'] Fourth Amended Complaint alleges ten counts, eight of which embody traditional causes of action sounding in tort and contract: fraud and deceit, negligent misrepresentation, intentional infliction of emotional distress, negligence, breach of express and implied warranties, strict product liability, and conspiracy. In addition, the complaint avers that Petitioners have violated several provisions of the Maryland Consumer Protection Act, codified at Maryland Code (1975, 2000 Repl.Vol.) §§ 13–101 to 13–501 of the Commercial Law Article. Lastly, Respondents plead a cause of action heretofore unrecognized in Maryland, requesting equitable/injunctive relief in the form of court-supervised, defendant-funded 'medical monitoring' of the classes, to detect, prevent and treat future disease, and to treat addiction.

"[The named plaintiffs] filed a Motion for Class Certification on September 5, 1997. Following oral argument on the motion, the Circuit Court issued an Order and Memorandum Opinion on January 28, 1998, granting the Motion for Class Certification. More specifically, the court approved for class action treatment, under Maryland Rule 2–231(b)(3), [the named plaintiffs'] eight traditional tort and contract causes of action and single consumer protection claim. In addition, the trial judge found [the named plaintiffs'] claim for medical monitoring appropriate for prosecution as a class action, under Rule 2–231(b)(2)."

*Philip Morris,* 358 Md. at 699–701, 752 A.2d at 205–06 (footnotes omitted). On February 19, 1998, the Circuit Court issued a class certification order certifying the named plaintiffs' proposed class. *See id.* at 701–02, 752 A.2d at 206–07.

After the Circuit Court issued this class certification Order, the defendants in the *Philip Morris* class action litigation petitioned this Court for a writ of mandamus directing the Circuit Court to vacate the class certification Order. We

granted the petition and issued a writ of mandamus on June 15, 2000 directing the Circuit Court to vacate its class certification Order. *Id.* at 787–89, 752 A.2d at 254–55.

Mr. Christensen was not a named plaintiff in the *Philip Morris* class action litigation, nor did he file a motion to intervene as a plaintiff. He did, however, participate in the litigation. On May 11, 1999, he provided an affidavit on behalf of the named plaintiffs, discussing his smoking habit and his lung cancer. Further, on June 30, 1999, he testified at a *de bene esse* deposition, in which he also discussed his lung cancer diagnosis and the history of his cigarette use.

Returning to the case *sub judice,* petitioners moved for summary judgment in the Circuit Court on September 4, 2003, arguing that all of respondents' claims were barred by the statutes of limitations. The Circuit Court granted the motion on November 19, 2003. In its memorandum opinion in support of the Order, the Circuit Court concluded that Mr. Christensen was on inquiry notice by the Spring of 1998 of his claims against petitioners, rendering respondents' survival claims untimely. The Circuit Court rejected respondents' argument that the statute of limitations was tolled in any way by the pendency of the *Philip Morris* class action. The court held that respondents' wrongful death claims were also untimely, reasoning that Maryland's wrongful death statute does not permit a wrongful death plaintiff to maintain a cause of action once the statute of limitations for causes of action arising out of the underlying wrongful acts has run.

Respondents noted a timely appeal to the Court of Special Appeals. In a reported opinion, that Court reversed the judgment of the Circuit Court as to all petitioners except Giant, vacated the judgment of the Circuit Court granting summary judgment to petitioner Giant and remanded the case to that court for further consideration on the issue of Giant's summary judgment motion. *See Christensen v. Philip Morris,* 162 Md.App. 616, 875 A.2d 823 (2005). The Court of Special Appeals held that the pendency of the *Philip Morris* class action tolled the statute of limitations for Mr. Christensen's

claims against the *Philip Morris* petitioners, and reversed the Circuit Court's grant of summary judgment to the *Philip Morris* petitioners on this basis. *See Christensen*, 162 Md. App. at 659, 875 A.2d at 848. Because Giant was not a defendant in the *Philip Morris* class action litigation, however, the Court of Special Appeals concluded it was necessary to reach the issue of when Mr. Richardson was placed on inquiry notice of his claims arising out of his cigarette smoking in order to determine whether the Circuit Court's grant of summary judgment to Giant was proper. *See id.* at 659, 875 A.2d at 849. Taking note of the fact that it had recently addressed a similar issue in *Benjamin v. Union Carbide Corporation*, 162 Md.App. 173, 873 A.2d 463 (2005), the Court of Special Appeals vacated the Circuit Court's grant of summary judgment to Giant, and remanded the case for reconsideration in light of this case. *See id.* at 666–68, 875 A.2d at 853–56.

Petitioners timely petitioned this Court for a writ of certiorari, which we granted to consider the following two questions:

"1. May Maryland courts create a judicial exception to statutes of limitations under which the filing of a class action lawsuit automatically tolls the running of limitations for all claims of would be class members?

"2. Did the Court of Special Appeals err in remanding the survival claims for reconsideration in light of *Benjamin v. Union Carbide Corp.*, 162 Md.App. 173, 873 A.2d 463 (2005), when that decision, as well as this Court's precedent, supports the trial court's determination that those claims were barred by the general statute of limitations ... ?"

*Philip Morris v. Christensen*, 389 Md. 124, 883 A.2d 914 (2005).

## II.

Petitioners offer three main arguments on the issue of class action tolling. First, they contend that this Court's precedents preclude judicial recognition of a tolling exception to a statute of limitations such as the class action tolling exception

recognized by the Supreme Court in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), maintaining that the creation of such an exception is the exclusive prerogative of the General Assembly. Second, they argue that even if we do conclude that we have the authority to judicially recognize a class action tolling exception, we should not adopt a version of class action tolling that would toll the statute of limitations in mass-tort putative class actions such as the *Philip Morris* putative class action. Third, petitioners maintain that even if we were to adopt the rationale of *American Pipe,* the class action tolling rule enunciated therein would not render respondents' claims timely, given the Supreme Court's elaboration of *American Pipe* in *Chardon v. Soto,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983).

Respondents reply that there is precedent in Maryland law for the judicial recognition of tolling exceptions to statutes of limitations. They then argue that Maryland should adopt *American Pipe* tolling, and should not carve out an exception for mass-tort putative class actions to the class action tolling rule of *American Pipe,* because adopting such an exception would be inconsistent with this Court's conclusion in *Philip Morris v. Angeletti,* 358 Md. 689, 752 A.2d 200 (2000), that there is no per se prohibition against mass-tort class action suits, but that each such suit must be examined individually on its merits to determine whether certification of the suit as a class action is appropriate. Finally, respondents reply to petitioners' final argument that *Chardon* is inapplicable to the facts of this case because Mr. Christensen's claims did not accrue until after the filing of the putative class action in *Philip Morris.*

### III.

#### A. This Court's Authority to Recognize *American Pipe* Tolling

As a threshold matter, we first consider the issue of whether this Court has the authority to recognize a tolling exception

to statutes of limitations akin to the *American Pipe* class action tolling exception. Although, as petitioners quite correctly point out, our precedents generally have been less than hospitable to the concept of judicially created tolling exceptions, this lack of hospitality is not uniform. In short, although we have on several occasions declined to recognize tolling exceptions, we have been willing to do so when the tolling exception was consistent with the purposes of statutes of limitations. Thus, because the version of *American Pipe* tolling we find to be preferable is consistent with the purposes of statutes of limitations, we conclude that we do have the authority to recognize this version of *American Pipe* tolling.

In *Bertonazzi v. Hillman*, 241 Md. 361, 216 A.2d 723 (1966), we recognized a tolling exception to a statute of limitations, and, in the course of doing so, delineated the scope of our authority to recognize such exceptions. There, we addressed the issue of whether a statute of limitations for the filing of a claim against a decedent's estate that required such a suit to be filed within six months after the qualification of the estate's personal representative was tolled during the pendency of an action against the estate that had been filed in the wrong venue.[2] *See Bertonazzi*, 241 Md. at 363–64, 216 A.2d at 724– 25. Appellant, mistakenly believing that appellee resided in Baltimore County rather than Baltimore City after misreading a map, filed suit in Baltimore County within the six month limitations period. *Id.* at 363, 216 A.2d at 724. After the suit in Baltimore County was dismissed for improper venue, appellant then filed suit in Baltimore City, the proper venue, but only after six months had passed from the time of the appointment of the personal representative. *Id.* at 364, 216 A.2d at

---

**2.** The statute, Md.Code (1957, 1964 Repl.Vol.), Art. 93 § 112, provided in pertinent part as follows:

"Executors and administrators ... shall be liable to be sued in any court of law ... in any action (except slander) which might have been maintained against the deceased; ... provided, however, that any such action for injuries to the person to be maintainable against an executor or administrator must be commenced within six calendar months after the date of the qualification of the executor or administrator of the testator or intestate."

724. Appellant argued that the statute of limitations was tolled during the pendency of the suit in Baltimore County, but the Baltimore City trial court rejected this argument and dismissed the case. *Id.* at 364, 216 A.2d at 724–25.

We reversed the judgment of the trial court, holding that the running of the statute of limitations was tolled during the pendency of the suit in Baltimore County. *Id.* at 365, 216 A.2d at 725. In support of our holding, we first noted that, at the time, Maryland was one of the few jurisdictions without a "savings" rule that permitted a suit filed prior to the expiration of the applicable limitations provision that was dismissed for a reason unrelated to the merits to be refiled within a specified time period. *Id.* We then examined the tolling rule urged by the plaintiff in light of the purposes statutes of limitations are intended to serve. *See id.* at 366–67, 216 A.2d at 726. In this vein, we noted that "[s]tatutes of limitations are designed primarily to assure fairness to defendants on the theory that claims, asserted after evidence is gone, memories have faded, and witnesses disappeared, are so stale as to be unjust." *Id.* at 367, 216 A.2d at 726. Under the facts in *Bertonazzi*, we concluded that tolling the running of the limitations period during the pendency of the suit filed in the improper venue was consistent with this "primary purpose" because "the appellee ... *was as fully put on notice of the appellant's claim* by suit in Baltimore County as she would have been by suit in Baltimore City." *Id.* (emphasis added).

■ The rule we established in *Bertonazzi* may be distilled as follows: we will recognize a tolling exception to a statute of limitations if, and only if, the following two conditions are met: (1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations. *See id.* at 366–67, 216 A.2d at 726 (noting that our interpretation of the statute of limitations at issue in *Bertonazzi* "is consistent with the purposes and aims of limitation statutes generally" and "is supported by eminent and persua-

sive authority"); *see also Weaver v. Leiman,* 52 Md. 708, 718 (1880) (observing that running of a statute of limitations may be suspended if there is a "certain and well-defined exception clearly established by *judicial* authority" (emphasis added)). The second condition ensures that our recognition of a tolling exception to a statute of limitations does not invade the prerogative of the General Assembly. *See id.* at 367–68, 216 A.2d at 726–27 (noting that tolling exceptions can be recognized when they "gratif[y] legislative intent," and in order to "prevent perversion of the policy and purpose of a statute of limitations").[3]

The cases where we have refused to recognize a tolling exception to a statute of limitations are not inconsistent with this rule. For instance, in *Walko Corp. v. Burger Chef,* 281 Md. 207, 378 A.2d 1100 (1977), we declined to recognize a tolling exception to the default three year statute of limitations on civil actions. *Walko,* 281 Md. at 208, 378 A.2d at 1100. In *Walko,* appellant argued that the statute of limitations was

---

**3.** For this reason, we discern no merit in petitioners' suggestion that recognition of a tolling exception to a statute of limitations is *per se* inconsistent with the separation of powers principles embodied in Article 8 of the Maryland Declaration of Rights. Interpreting statutory enactments in order to ascertain legislative intent is unquestionably a core judicial function; it hardly needs to be said that this Court does not exceed the scope of its powers under Article 8 in so doing. *See Stearman v. State Farm,* 381 Md. 436, 454, 849 A.2d 539, 550 (2004) (interpreting statutory law is a "sphere that belongs uniquely to the judiciary"); *cf. Moore v. State,* 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005) (cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature). Furthermore, it is well-established that we may look to the underlying purpose of a statutory enactment in order to ascertain legislative intent. *See Moore,* 388 Md. at 453, 879 A.2d at 1114.

In addition, as discussed *infra,* our conclusion that we have the authority to recognize a version of *American Pipe* tolling is bolstered by the fact that we find support for its recognition in Md. Rule 2-231, which establishes the procedures for class actions. We have long held that Article 8 "does not impose a complete separation between the branches of government." *Benson v. State,* 389 Md. 615, 644, 887 A.2d 525, 542 (2005). Consequently, we do not exceed our authority under Article 8 when we exercise our rulemaking authority to adopt a Maryland Rule that effects the operation of a statute of limitations enacted by the General Assembly.

tolled during the pendency of its motion to intervene in another suit involving appellee in the United States District Court for the District of Columbia, rendering its subsequent suit against appellee timely. *See id.* at 209, 378 A.2d at 1101. In rejecting appellant's claim that the pendency of his motion to intervene tolled the statute of limitations, we contrasted appellant's proposed tolling exception with the exception we recognized in *Bertonazzi*, effectively concluding that appellant's proposed tolling rule did not meet either of the *Bertonazzi* requirements. *See id.* at 214–15, 378 A.2d at 1104 ("[w]hatever facts may have been present in *Bertonazzi* . . . that moved us . . . do not exist here"). We did not find that the first requirement, that the proposed tolling exception needs to be supported by persuasive authority or argument, was met, because appellant's proposed tolling rule would permit a plaintiff to "effectively postpone the running of the statute [of limitations] for an indefinite period of time." *Id.* at 215, 378 A.2d at 1104. Nor did we find that the second *Bertonazzi* requirement, consistency with the purposes of statutes of limitations, had been met. We found that appellant's actions did not rise to a level of "ordinary diligence" in pursuing a cause of action, and thus concluded that permitting tolling under these circumstances would be inconsistent with the legislative intent behind statutes of limitations, which embody "a legislative judgment of what is deemed an adequate period of time in which 'a person of ordinary diligence' should bring his action." *Id.* (quoting *Ferrucci v. Jack*, 255 Md. 523, 526, 258 A.2d 414, 415 (1969)).

In other cases in which we have declined to recognize a tolling exception to a statute of limitations, we have also found, as we did in *Walko*, that the tolling exception under examination failed to meet one or both of the *Bertonazzi* requirements. *See, e.g., Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 624–25, 500 A.2d 641, 645–46 (1985) (declining to recognize a tolling exception that would suspend the running of the statute of limitations applicable to a claim based on negligent installation of a product during the time that the installer of the product attempted to repair the product because there was

authority only for the proposition that the initiation of repairs suspends the running of the statute of limitations on a theory of equitable estoppel, and, under Maryland law, equitable estoppel can suspend the running of a statute of limitations only if the defendant holds out an inducement not to file suit or indicates that limitations will not be plead, neither of which is accomplished by undertaking repairs of a product alleged to have been negligently installed); *Burket v. Aldridge, Adm'r,* 241 Md. 423, 428, 216 A.2d 910, 912 (1966) (declining to recognize a tolling exception that would toll the general three-year statute of limitations applicable to tort actions upon the alleged tortfeasor's death because the absence of an express statutory provision providing for such tolling was understandable "in the light of the purposes of Statutes of Limitations"); *McMahan v. Dorchester Fert. Co.,* 184 Md. 155, 159–60, 40 A.2d 313, 315–16 (1944) (declining to recognize a tolling exception to a twelve-year statute of limitations for initiation of an action to collect on a note that would suspend the running of the statute upon a payment of principal on grounds that the statute expressly provided for a three-year suspension upon each payment of interest, indicating the legislature had expressly considered when and how payments on the note should suspend the running of the limitations period and decided that payments of principal should not suspend the running of the limitations period).

■ In assessing whether we have authority to recognize a version of the *American Pipe* class action tolling rule, it is also significant that the principal justification for recognition of such a rule is that it is necessary to preserve the integrity of the class action procedures set out in Md. Rule 2–231. The Rules of Procedure established by this Court in its exercise of its rulemaking power have the force of law. *See Dotson v. State,* 321 Md. 515, 523, 583 A.2d 710, 714 (1991). Thus, insofar as our recognition of an *American Pipe* class action tolling rule is grounded in Rule 2–231, it differs from those situations where we have declined to recognize a tolling exception in part because there was no provision in existing law that supported the tolling exception. *Compare Booth,* 304 Md. at

624, 500 A.2d at 645 (declining to recognize a tolling exception because "the legislature ... made no such provision" that would toll the statute in accordance with the proposed tolling exception) *with Walko,* 281 Md. at 211–12, 378 A.2d at 1102 (concluding that the statute of limitations would not be tolled during pendency of a motion to intervene "[a]bsent a statutory provision saving the plaintiff's rights" to bring suit upon denial of the motion to intervene).

Indeed, this Court not only has the authority to adopt rules that alter the operation of existing statutes of limitations, it has exercised its rulemaking authority to adopt such a rule. Maryland Rule 2–101(b), added to the Maryland Rules in 1992, provides as follows:

"Except as otherwise provided by statute, if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the statute of limitations required to be applied by that court, an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State."

Thus, to the extent that Rule 2–231 provides authority for our recognition of a version of the *American Pipe* class action tolling rule, our adoption of Rule 2–101(b) provides support for our recognition of such a rule, because our adoption of Rule 2–101(b) provides precedent for alteration of existing statutes of limitations by a Maryland Rule.

### B. The Scope of the *American Pipe* Class Action Tolling Rule

We now consider the arguments for adopting a version of the rule at all, and those for adopting particular versions of the rule. To this end, we begin by examining in detail *American Pipe* and its progeny, in particular *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

In *American Pipe*, the State of Utah filed a civil antitrust action in the United States District Court for the District of Utah for treble damages against American Pipe and the other petitioners, alleging that they had fixed the price of concrete and steel pipe sold to the State. *American Pipe*, 414 U.S. at 541, 94 S.Ct. at 760. The suit was filed as a class action suit, purporting to be brought on behalf of "public bodies and agencies of the state and local government in the State of Utah who are end users of pipe acquired from the defendants," and on behalf of other western States that had not brought similar actions. *Id.* The suit by the State of Utah was timely under the applicable statute of limitations, 15 U.S.C. § 16(b), which provides that a party has one year from the time that civil or criminal proceedings brought by the United States to enforce the antitrust laws have concluded to file a civil antitrust suit. *Id.* at 541–42, 94 S.Ct. at 760.[4]

After the suit was transferred to the United States District Court for the Central District of California by the Judicial Panel on Multi-district Litigation, the petitioners moved pursuant to Fed.R.Civ.P. 23(c) for an order that the suit could not be maintained as a class action. *Id.* at 542, 94 S.Ct. at 760–61. The trial judge granted the motion. *Id.* at 542–43, 94 S.Ct. at 761. In its memorandum opinion in support of the Order, the trial court evaluated whether the proposed class satisfied the four prerequisites for bringing a class action set forth in Fed.R.Civ.P. 23(a).[5] *Id.* at 543, 94 S.Ct. at 761. The trial

---

**4.** The United States brought criminal and civil antitrust actions against American Pipe and the other petitioners. These proceedings concluded on May 24, 1968, when a consent judgment was entered in the civil action. *American Pipe*, 414 U.S. at 542, 94 S.Ct. at 760. The suit was filed on May 13, 1969, making it timely by eleven days under 15 U.S.C. § 16(b). *Id.* at 542, 94 S.Ct. at 760.

**5.** Federal Rule of Civil Procedure 23(a) reads as follows:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

court concluded that, although the prerequisites of commonality, typicality, and the suitability of the class representative had all been met, the requirement of numerosity had not been met, on the ground that the estimate of the size of the plaintiff class provided in the complaint was, in the court's opinion, overstated. *Id.* Consequently, the trial court concluded that joinder of all the members of the class was not impracticable, and refused to certify the proposed plaintiff class. *Id.*

After the trial court denied class certification, approximately sixty members of the proposed plaintiff class moved to intervene as plaintiffs pursuant to Fed.R.Civ.P. 24, moving to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2), and in the alternative, to intervene by permission pursuant to Fed. R.Civ.P. 24(b)(2). *Id.* at 543–44, 94 S.Ct. at 761. The trial court denied the request on grounds that the motions to intervene were untimely, concluding that the running of the limitations period had not been tolled by the filing of the putative class action on their behalf. *Id.* at 544, 94 S.Ct. at 762. On appeal, the United States Court of Appeals for the Ninth Circuit reversed, holding that the limitations period was tolled by the filing of the pendency of the putative class action, and did not begin to run again until the trial court entered its Order denying class certification. *Id.* at 544–45, 94 S.Ct. at 762.

The Supreme Court, in upholding the judgment of the United States Court of Appeals for the Ninth Circuit, began by examining the history of the then-current version of Fed. R.Civ.P. 23, contrasting it with the pre–1966 version of the Rule. *See id.* at 545–50, 94 S.Ct. at 762–64.[6] The Court noted

---

class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Conditions (1)-(4) in the rule are commonly referred to as the prerequisites of "numerosity," "commonality," "typicality," and the "adequacy of representation." *See Philip Morris,* 358 Md. at 732–43, 752 A.2d at 223–29 (employing this terminology and discussing these conditions). We shall adhere to this common usage in this opinion.

**6.** Prior to 1966, Fed.R.Civ.P. 23 read as follows:

that, under the prior version of the Rule, there was "no mechanism for determining at any point in advance of final judgment which of those potential members of the class claimed in the complaint were actual members and would be bound by the judgment." *Id.* at 545–46, 94 S.Ct. at 762–63. Accordingly, the prior version of the Rule was characterized as being " 'merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted.' " *Id.* at 546, 94 S.Ct. at 763 (quoting 3B JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE ¶ 23.10(1) (2d ed.)). This facet of the prior rule permitted members of the putative plaintiff class to sit on the sidelines

---

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought.

(b) Secondary action by shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort.

(c) Dismissal or compromise. A class action shall not be dismissed or compromised without the approval of the court. If the right sought to be enforced is one defined in paragraph (1) of subdivision (a) of this rule notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. If the right is one defined in paragraphs (2) or (3) of subdivision (a) notice shall be given only if the court requires it."

during the course of litigation and intervene only if they concluded that the course of events during trial was favorable, because there was no fear that they would be bound by an unfavorable final judgment if they chose not to intervene. *Id.* at 547, 94 S.Ct. at 763. It takes little perspicacity to discern that this facet of the Rule prompted objections on grounds of unfairness to defendants, who were not given a corresponding right under the prior version of the Rule to potentially have multiple attempts to achieve a favorable outcome in litigation. *See id.*[7]

The Court then observed that the 1966 amendments to Rule 23 were intended to remedy this perceived defect. *Id.* The Court explained the mechanics and ultimate effects of these amendments as follows:

"Under the present Rule, a determination whether an action shall be maintained as a class action is made by the court '(a)s soon as practicable after the commencement of an action brought as a class action. . . .' Rule 23(c)(1). Once it is determined that the action may be maintained as a class action under subdivision (b)(3), the court is mandated to direct to members of the class 'the best notice practicable under the circumstances' advising them that they may be excluded from the class if they so request, that they will be bound by the judgment, whether favorable or not if they do not request exclusion, and that a member who does not request exclusion may enter an appearance in the case. Rule 23(c)(2). Finally, the present Rule provides that in Rule 23(b)(3) actions the judgment shall include all those found to be members of the class who have received notice and who have not requested exclusion. Rule 23(c)(3). Thus, potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation 'as soon as practicable after the commencement' of

---

7. As the Court noted, practice under the former version of the Rule sometimes permitted members of the putative class to await even final judgment on the merits to determine whether to join the suit. *American Pipe*, 414 U.S. at 547, 94 S.Ct. at 763.

the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class. Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse."

*Id.* at 547–49, 94 S.Ct. at 763–64 (footnotes omitted).

The Court then proceeded to articulate the rationale for its holding. The principal rationale offered by the Court was that tolling was necessary to effectuate the purposes behind the revised version of Rule 23. *Id.* at 553–54, 94 S.Ct. at 766. The Court noted that "[a] contrary rule ... would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Id.* at 553, 94 S.Ct. at 766. This is so because, without a rule that tolls the statute of limitations, members of the putative class would be forced to file protective motions to join or intervene in the action in order to ensure that they would not be barred from bringing suit individually in the event that the court determined that the action could not be maintained as a class action. *See id.* at 553–54, 94 S.Ct. at 766. Thus, the Court, in an oft-quoted passage, concluded as follows:

"We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."

*Id.* at 554, 94 S.Ct. at 766.

Despite the apparent breadth of the above-quoted language, both the opinion of the Court and, in particular, the concurring opinion of Justice Blackmun, were careful to note that the class action tolling rule adopted by the Court in *American Pipe* was to be applied in such a way that its application was not inconsistent with the purposes behind statutes of limitations. The Court, noting that statutes of limitations are

intended to give notice of suit to defendants within a reasonable amount of time to prevent loss of evidence and the fading of witnesses' memories, concluded that these policies underlying statutes of limitation were not undermined under the facts of *American Pipe. Id.* at 554–55, 94 S.Ct. at 766–67. The Court stated as follows:

> "The[se] policies ... are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors."

*Id.* at 554–55, 94 S.Ct. at 766–67 (footnotes omitted). The Court's concern with ensuring that the tolling rule it was adopting was not at odds with the policies underlying statutes of limitations was further evidenced by the narrowness of its statement of its holding:

> "We hold that *in this posture, at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,'* the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status."

*Id.* at 552–53, 94 S.Ct. at 765–66 (emphasis added).

Justice Blackmun, in his concurring opinion in *American Pipe,* wrote separately to emphasize that he did not regard the Court's opinion as necessarily tolling the statute of limitations for every member of a putative plaintiff class once a putative class action has been filed. *See id.* at 561, 94 S.Ct. at 770

(Blackmun, J., concurring). Interpreting the Court's holding to toll the statute of limitations only for putative class members who move to intervene pursuant to Fed.R.Civ.P. 24, Justice Blackmun noted that, under Fed.R.Civ.P. 24(b), a trial court may deny intervention if it "concludes that [it] will 'unduly delay or prejudice the adjudication of the rights of the original parties.' " *Id.* at 562, 94 S.Ct. at 770 (quoting Fed.R.Civ.P. 24(b)). Given the importance of upholding the purposes behind statutes of limitations, Justice Blackmun cautioned that trial courts should exercise their discretion under Rule 24(b) to prevent attorneys in class actions cases from "fram[ing] their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." *Id.* at 561–62, 94 S.Ct. at 770.

In *Crown, Cork & Seal,* the Court considered whether the filing of a putative class action tolled the statute of limitations for putative class members who filed individual claims after class certification was denied rather than intervened in the original action, an issue left unresolved by *American Pipe. Crown, Cork & Seal,* 462 U.S. at 348–49, 103 S.Ct. at 2395. The Court answered this question in the affirmative, holding that *American Pipe* applies to toll the statute of limitations for the individual claims of putative class members filed after denial of class certification just as it tolls the statute of limitations for intervenors. *See id.* at 350–51, 103 S.Ct. at 2395–96. The Court reasoned that extension of *American Pipe* to later-filed individual claims was necessary to prevent individual putative class members from filing protective claims, and hence was necessary to avoid the inefficiencies that the *American Pipe* tolling rule was designed to avoid. *Id.* at 350–51, 103 S.Ct. at 2396. This is so, the Court maintained, because there are many reasons for a plaintiff to prefer filing an individual claim over intervention: the putative class member may choose to file in a more convenient forum than the forum of the original putative class action, the putative class member may not wish to share control of the litigation with the other plaintiffs in the original action, and, if intervention as of right is not available, the plaintiff runs a

real risk of a denial of its motion to intervene under Fed. R.Civ.P. 24(b). *Id.*

In a concurring opinion, Justice Powell, joined by Justices Rehnquist and O'Connor, wrote separately to "reiterate the view expressed by Justice Blackmun" in his concurrence in *American Pipe. Id.* at 354, 103 S.Ct. at 2398 (Powell, J., concurring). Justice Powell admonished that the *American Pipe* tolling rule "should not be read ... as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *Id.* He endorsed Justice Blackmun's view in his concurrence in *American Pipe* that, when a putative class member seeks to intervene by permission pursuant to Fed. R.Civ.P. 24(b) after denial of class certification, the trial court should protect defendants from having to defend claims of which they had no prior notice. *Id.* at 355, 103 S.Ct. at 2398. Justice Powell then cautioned that the same concern about ensuring that defendants are not prejudiced by permissive intervenors asserting claims of which the class action suit did not give notice applies with equal force when a putative class member files a separate claim after class certification is denied, stating as follows:

> "Similarly, when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.' Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations."

*Id.* (quoting *American Pipe,* 414 U.S. at 562, 94 S.Ct. at 770 (Blackmun, J., concurring)).

The wide majority of states with class action rules similar to Fed.R.Civ.P. 23 have followed *American Pipe* and endorsed a class action tolling rule.[8] State court opinions endorsing

---

8. *See, e.g., Vaccariello v. Smith & Nephew Richards, Inc.,* 94 Ohio St.3d 380, 763 N.E.2d 160, 163 (Ohio 2002); *Blaylock v. Shearson Lehman*

*American Pipe* class action tolling and lower federal court opinions applying it, however, vary in terms of their depth of treatment, and, most significantly, in terms of the emphasis they place on ensuring that *American Pipe* is applied consistently with the purposes of statutes of limitations. In *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923 (1988), the California Supreme Court aptly observed that *American Pipe* represented an attempt to balance two fundamental policy considerations, "the protection of the class action device," and "the effectuation of the purposes of the statute of limitations." *Id.* at 935. Consequently, the *Jolly* court observed, some courts implementing *American Pipe* have emphasized the first policy consideration, and others have emphasized the latter. *Id.* Courts emphasizing the policy of ensuring that the class action rule functions efficiently have either held explicitly that the concern of the *American Pipe* Court with ensuring that efficiency of class action procedure and avoiding duplicate individual filings takes primacy over the promotion of the purposes of statutes of limitations, or have adopted or implemented *American Pipe* in such a way as to implicitly indicate such primacy by omission of discussion of the purposes of statutes of limitation. *See, e.g., Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 609 (7th Cir.1980) (concluding that it was "implicit" in *American Pipe* that " 'effectuation of the purpose of litigative efficiency and economy,' (which Rule 23 was designed to perform) transcends the policies of repose and certainty behind statutes of limitations"); *Blaylock*, 954 S.W.2d at 941 (citing *American Pipe*

---

*Bros., Inc.*, 330 Ark. 620, 954 S.W.2d 939, 941 (1997); *Am. Tierra Corp. v. City of West Jordan*, 840 P.2d 757, 762 (Utah 1992); *Levi v. Univ. of Hawaii*, 67 Haw. 90, 679 P.2d 129, 132 (Haw.1984); *Waltrip v. Sidwell Corp.*, 234 Kan. 1059, 678 P.2d 128, 132 (1984); *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988, 1010 n. 28 (Idaho 1982); *Nolan v. Sea Airmotive, Inc.*, 627 P.2d 1035, 1042 (Alaska 1981); *First Baptist Church of Citronelle v. Citronelle–Mobile Gathering, Inc.*, 409 So.2d 727, 729–30 (Ala.1981); *Alessandro v. State Farm*, 487 Pa. 274, 409 A.2d 347, 350 n. 9 (1979); *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634, 645 (1977); *Bergquist v. Int'l Realty, Ltd.*, 272 Or. 416, 537 P.2d 553, 561 (1975).

and concluding that pending putative class action tolled applicable statute of limitations without further analysis).

Cases applying *American Pipe* that have focused on the policies underlying statutes of limitations, echoing Justice Blackmun's concurrence in *American Pipe* and Justice Powell's concurrence in *Crown, Cork & Seal,* have held that *American Pipe* class action tolling applies only when the class action complaint gives the defendants notice of the claims of the putative class members who intervene or file suit individually after class certification is denied. *See, e.g., McCarthy v. Kleindienst,* 562 F.2d 1269, 1272 (C.A.D.C.1977) (declining to adopt a per se rule that would render *American Pipe* inapplicable when class certification is denied on grounds of lack of typicality or commonality, but noting that the class action complaint must result in "the defendant receiv[ing] fair notice of the nature of the intervenors' claims" for *American Pipe* to apply); *Jolly,* 245 Cal.Rptr. 658, 751 P.2d at 936 (declining to apply class action tolling where class action complaint sought only injunctive relief for the putative class, but individual claim filed after class certification was denied sought money damages).

This divergence in the interpretation and application of *American Pipe* and its progeny is understandable given the ambiguity in *American Pipe's* discussion of the relation between the purposes of statutes of limitations and the class action tolling rule the Court articulated in the opinion. Specifically, the Court's discussion of this issue in *American Pipe* is ambiguous between (1) imposing an additional necessary condition for the application of the class action tolling rule it was adopting, and (2) simply claiming that the rule it was adopting was in fact consistent with the purposes underlying statutes of limitations, at least under the facts of the case before it. Thus, when the Court in *American Pipe* noted that the policies underlying statutes of limitations were satisfied when defendants have been "notifie[d] ... not only of the substantive claims against them, but also of the number and generic identities of the potential plaintiffs," it is unclear whether the *American Pipe* Court intended, by virtue of the narrow

statement of its holding, to adopt a requirement that a defendant be so notified by a class action complaint in order for a plaintiff to assert class action tolling against the defendant. The differing approaches taken by courts applying *American Pipe* identified by the *Jolly* court, in our view, can be seen as representing the different possible resolutions of this ambiguity in *American Pipe*.

 We adopt the *American Pipe* class action tolling rule, and its extension in *Crown, Cork & Seal*, but with the understanding that the *American Pipe* tolling rule incorporates the discussion of notice as an additional requirement that must be met in order for a plaintiff or intervenor to claim the benefit of the rule. Md. Rule 2–231 was modeled after the 1966 version of Fed.R.Civ.P. 23, the version of Rule 23 in effect when *American Pipe* was decided. *See* Md. Rule 2–231, Source Note (every subsection of the Rule, other than subsection (g) dealing with discovery, derived in whole or in part from the 1966 version of Fed.R.Civ.P. 23). In particular, subsections (a) and (c) of the 1966 version of Rule 23, those aspects of the Rule principally relied upon by the *American Pipe* Court, are virtually identical to subsections (a) and (c) of Rule 2–231. We have long held that federal caselaw interpreting a Federal Rule of Civil Procedure is persuasive authority for the interpretation of a Maryland Rule patterned after the federal rule. *See, e.g., Garay v. Overholtzer*, 332 Md. 339, 355, 631 A.2d 429, 437 (1993). In particular, in interpreting Rule 2–231 we have looked to federal authority interpreting Rule 23 given the "dearth of authority in Maryland analyzing the specific requirements of ... Rule 2–231." *Philip Morris*, 358 Md. at 724, 752 A.2d at 219. We find the principal rationale offered by the *American Pipe* and *Crown, Cork & Seal* courts for the recognition of a class action tolling rule to be persuasive. One of the main reasons for having a class action procedure in the first place is, as the *American Pipe* Court correctly observed, the promotion of judicial economy and efficiency. *American Pipe*, 414 U.S. at 553, 94 S.Ct. at 766. Class action procedures are designed to promote these ends by preventing duplication, permitting when possible the claims of large classes of persons

to be litigated at once rather than individually or as a joint action in order to avoid unnecessary repeated litigation of substantially similar issues, and to avoid the procedural inefficiencies involved with the joinder of large numbers of parties and with the litigation of joint actions involving large numbers of parties. The ends of efficiency and economy, therefore, are undermined to the extent that members of a putative plaintiff class have a genuine incentive to file prophylactic motions to intervene or individual complaints in order to prevent their claims being barred by the statute of limitations. We agree with the *American Pipe* Court that, in the absence of a class action tolling rule, putative plaintiff class members will indeed have a sufficiently strong incentive to file protective claims to justify adoption of a class action tolling rule.

Moreover, we agree with the *Crown, Cork & Seal* Court's conclusion that there is no reason to extend tolling to putative class members who intervene in an action after class certification is denied but to deny it to individual class members who later file individual suits.[9] As the *Crown, Cork & Seal* Court

9. We express no opinion as to whether we would recognize the doctrine of cross-jurisdictional class action tolling, under which the filing of a putative class action in a different jurisdiction tolls the statute of limitations for putative class members to file individual claims in the jurisdiction recognizing cross-jurisdictional tolling while the issue of class certification is pending in the other jurisdiction. The supreme courts of states that recognize class action tolling have split on the issue of whether to adopt cross-jurisdictional tolling. *Compare Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380, 763 N.E.2d 160, 163 (Ohio 2002) (recognizing cross-jurisdictional class action tolling) *with Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn.2000) (declining to recognize cross-jurisdictional class action tolling); *Portwood v. Ford Motor Co.*, 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102, 1104 (Ill.1998) (same). Likewise, federal courts exercising diversity jurisdiction have split on the issue of whether state supreme courts would recognize cross-jurisdictional class action tolling. *Compare Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 515–16 (S.D.N.Y.2001) (concluding that Connecticut would recognize cross-jurisdictional class action tolling) *with Wade v. Danek Med., Inc.*, 182 F.3d 281, 286–88 (4th Cir.1999) (concluding that Virginia would not recognize cross-jurisdictional class action tolling).

Jurisdictions that have declined to recognize cross-jurisdictional class action tolling have done so primarily out of concern that doing so would open their courts up to forum shopping. *See Maestas*, 33 S.W.3d

observed, filing an individual claim may be strategically more advantageous than intervention for a putative plaintiff class member who would wish to pursue a cause of action in the event that class certification is denied. *See Crown, Cork & Seal,* 462 U.S. at 350–51, 103 S.Ct. at 2396. Furthermore, refusing to extend class action tolling to later-filed individual claims may effectively shorten the time that a putative class member has to pursue his or her cause of action in the event that class certification is denied. As a prospective intervenor in an action filed as a putative class action, a member of the putative plaintiff class in such an action has no control over the litigation. Consequently, the putative class member is powerless to prevent dismissal of the original action, and thus may be left unable to litigate the claim even though the statute of limitations, as tolled by the pendency of the putative class action, has not completely run, because the putative class member would be left without an action in which he or she could intervene.

We are equally persuaded, however, that *American Pipe* must be understood to incorporate the discussion of the role statutes of limitations play in providing notice to defendants as imposing an additional requirement that must be met under the *American Pipe* class action tolling rule. Thus, under the version of class action tolling we recognize today, in order for a plaintiff to claim the benefit of class action tolling, the plaintiff must show, in addition to the other requirements under *American Pipe,* that the class action complaint notified

---

at 808 (arguing that "[a]doption of the doctrine would run the risk that Tennessee courts would become a clearinghouse for cases that are barred in the jurisdictions in which they otherwise would have been brought."); *Portwood,* 233 Ill.Dec. 828, 701 N.E.2d at 1104 (noting that few jurisdictions have adopted cross-jurisdictional class action tolling, and concluding that this fact would, if cross-jurisdictional class action tolling were adopted in Illinois, "encourage plaintiffs from across the country to bring suit [in Illinois] following dismissal of their class actions in federal court."). In *Vaccariello,* however, the Ohio Supreme Court rejected this argument, maintaining that cross-jurisdictional class action tolling would simply prevent Ohio plaintiffs from filing protective claims in Ohio courts during the pendency of a putative class action in the federal courts. *See Vaccariello,* 763 N.E.2d at 163.

the defendants of "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs." *American Pipe*, 414 U.S. at 555, 94 S.Ct. at 767. Consequently, we agree with the views on the scope of the *American Pipe* class action tolling rule expressed in Justice Blackmun's concurrence in *American Pipe* and Justice Powell's concurrence in *Crown, Cork & Seal*, and understand the class action tolling rule we recognize today to be subject to the limitations discussed in these concurrences. In particular, we emphasize that, in order to claim the benefits of class action tolling, the individual suit must "concern the same evidence, memories, and witnesses as the subject matter of the original class suit," *American Pipe*, 414 U.S. at 562, 94 S.Ct. at 770 (Blackmun, J., concurring), and that "[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe.*" *Crown, Cork & Seal*, 462 U.S. at 355, 103 S.Ct. at 2398 (Powell, J., concurring).

In our view, these notice restrictions on the scope of the *American Pipe* class action tolling rule are necessary because they ensure that the rule is consistent with the purposes of statutes of limitations. As discussed in detail *supra*, § III.A, this Court has long recognized the strong policy considerations in favor of strict application of statutes of limitations, and accordingly has recognized tolling exceptions only if the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations. One principal purpose of statutes of limitations is to provide defendants with notice of a claim within a sufficient period of time to permit the defendant to take necessary steps to gather and preserve the evidence needed to defend against the suit. *See, e.g., Hecht v. Resolution Trust*, 333 Md. 324, 332–33, 635 A.2d 394, 399 (1994). If the class action tolling rule we adopt did not contain the notice restrictions discussed above, then it could potentially be applied to preserve a claim that would otherwise be untimely, even though the defendant did not receive fair notice during the statutory limitations period that it may have to defend the claim. Thus, if we recognized

*American Pipe* class action tolling without the notice restrictions, we would, contrary to established precedent, recognize a tolling exception that is inconsistent with the purposes of statutes of limitations.

### C. *American Pipe* Class Action Tolling and Mass–Tort Suits

Petitioners argue that even if we recognize a class action tolling rule, we should restrict the rule so that the statutes of limitations are never tolled by the filing of a putative class action complaint that alleges causes of action arising out of a "mass-tort" incident. We are not persuaded.

To our knowledge, *no* court that has recognized some form of *American Pipe* class action tolling has adopted the per se mass-tort exception advocated by petitioners. In *Jolly,* the California Supreme Court supported this view in dicta, but it did not reach the issue of whether to adopt a mass-tort exception.

Petitioners point to one other opinion discussing a potential mass tort exception to the *American Pipe* class action tolling rule, *In re Rezulin Products Liability Litigation,* No. 00 Civ. 2843(LAK), MDL 1348, 03 Civ. 8933, 2005 WL 26867 (S.D.N.Y. Jan.5, 2005). There, the court, applying New Mexico law, held that New Mexico would not extend *American Pipe* class action tolling to mass-tort cases. *Id.* at *3. The court based its conclusion on a lack of positive indication in New Mexico case law that New Mexico would apply *American Pipe* class action tolling to mass-tort cases, coupled with the court's cursory observation that "[t]he wisdom of adopting the *American Pipe* rule in mass-tort cases is, to say the least, highly debatable." *Id.* (citing Mitchell A. Lowenthal & Norman Menachem Feder, *The Impropriety of Class Action Tolling for Mass Tort Statutes of Limitations,* 64 Geo. Wash. L.Rev. 532 (1996)).

Furthermore, we are not persuaded by the reasons offered by courts and commentators in support of a mass-tort exception to the *American Pipe* class action tolling rule. In *dicta,*

the *Jolly* court expressed skepticism as to whether *American Pipe* tolling should be applied to mass-tort suits:

"[B]ecause personal-injury mass-tort class-action claims can rarely meet the community of interest requirement in that each member's right to recover depends on facts peculiar to each particular case, such claims may be presumptively incapable of apprising defendants of 'the substantive claims being brought against them' ... a prerequisite, in our view, to the application of *American Pipe.* This being so, putative class members would be ill advised to rely on the mere filing of a class action complaint to toll their individual statute of limitations. The presumption, rather, should be to the contrary—i.e., that lack of commonality will defeat certification and preclude application of the *American Pipe* tolling doctrine."

*Jolly,* 245 Cal.Rptr. 658, 751 P.2d at 937–38 (citations omitted). We note that the *Jolly* court here is *not* endorsing the per se mass-tort rule advocated by petitioners, but is only endorsing the rule that a class action complaint that is not certified on grounds of lack of commonality is *"presumptively* incapable" of giving defendants adequate notice of the substantive claims being brought against them, not invariably so. *Id.* at 937 (emphasis added).

We think there is good reason for not extending this presumption to a per se exception. The mere fact that class certification is denied for lack of commonality does not mean that the class action complaint failed to give adequate notice to the defendant of the substantive claims of *every* member of the putative class who may file an individual action or intervene after denial of class certification. As the *Jolly* court correctly points out, denial of class certification in a mass-tort suit may indicate that the notice provided by the complaint to the defendant was inadequate, but it does not *invariably* render the class action complaint incapable of giving adequate notice to the defendant of an individual putative class member's claims. This determination must be made on a case-by-case basis.

The defects in the arguments offered in support of a per se mass-tort exception support our view. Lowenthal and Feder argue as follows:

"For mass tort personal injury cases, that notice must be sufficient to identify who the absent class members are. In such cases, each plaintiff's experience with the tort-causing agent, medical history, condition and prospects, and economic and personal profile are unique. Although some issues—like whether the product causes injury—may be common to all members of the putative class, the crux of each plaintiff's claim is the individualized experience with and reaction to the tort-causing agent...."

"The inadequacy of notice for tolling purposes is highlighted by examining how such classes are typically described in pleadings. Although each pleading is unique, personal injury mass tort classes are typically described as 'all persons injured by their use of drug x,' or 'all persons injured by their exposure to y.' Such descriptions provide defendants with no basis for gathering evidence about any particular plaintiff—other than those specifically named. Indeed, the only 'notice' the defendant receives is that something it did (e.g., the design or manufacture of its product) is alleged to have caused harm. That notice is sufficient to alert the defendant to preserve and gather evidence relating to its own conduct. The filing of an individual action, however, provides that notice, too. Yet, no one suggests that an individual filing should toll the limitations period for all possible plaintiffs. Rather, the notice provided in the class action—if it is to be sufficient to toll the limitations period—must do more: it must enable the defendant to gather evidence necessary to defend itself on the unique issues presented by the class of mass tort plaintiffs."

Lowenthal & Feder, *supra* at 575–77 (footnotes omitted). In short, Lowenthal and Feder argue that a mass-tort class action complaint is per se incapable of providing notice to a defendant adequate to apply *American Pipe* tolling because the complaint does not permit the defendant to identify non-

named putative class members, and knowledge of the identity of the putative class members is necessary for the defendant to gather and preserve the evidence necessary to defend against their claims.

This argument is defective in two main respects. First, there is no basis for the assumption that a defendant will invariably be unable to identify particular putative class members simply because the class action complaint involves claims arising out of a mass-tort incident. Even if the class is defined in terms of the persons who may have been injured by a particular product or exposed to a particular event, whether such a class definition is adequate to permit the defendant to ascertain the identities of the putative class members will depend upon the type of class involved, the particular class description provided in the complaint, and, most significantly, the information the defendant possesses concerning the relation between the product or event involved and the putative class members. There is no reason to assume, as do Lowenthal and Feder, that a defendant will *never* possess the necessary information to ascertain the identities of putative class members. For example, if a class action complaint asserts claims on behalf of a class of persons injured by the use of a particular product, it is entirely possible that the defendant may be able to ascertain the identities of the putative class members on the basis of its sales records.[10]

A second, equally significant, defect in Lowenthal and Feder's argument is their assumption that the defendant must be able to ascertain the identity of *every* putative class member in order for any member of the putative class to claim the benefit of class action tolling. They claim that "the notice

---

10. It is possible that the defendant may not have kept adequate sales records, or that the sales records coupled with other information available to the defendant may not be adequate to determine which persons who purchased the product may have suffered injury from its use. This, however, is beside the point, which is simply to point out that Lowenthal and Feder err in assuming that a defendant will invariably lack the access to information necessary to determine the identity of putative class members.

provided in the class action—if it is to be sufficient to toll the limitations period—must ... enable the defendant to gather evidence necessary to defend itself on the unique issues presented *by the class of mass-tort plaintiffs."* Lowenthal & Feder, *supra* at 577 (emphasis added). This is mistaken. The class action complaint must give the defendant sufficient notice to enable the defendant to defend itself on the unique issues presented by each particular member of the putative class who later files an individual action or intervenes in the underlying action after denial of class certification, if *that particular member* of the putative class is to be able to claim the benefits of class action tolling. If a class action complaint gives a defendant adequate notice of the claims of a particular member of the putative class who later files an individual action or intervenes after a denial of class certification, we see no reason why the statute of limitations should not be tolled for the claims of that particular member of the putative class simply because the class action complaint did not give the defendant adequate notice of the claims of some other member of the putative class. In such a situation, the defendant is placed on notice of the particular class member's claims, and it therefore has the opportunity to preserve and gather evidence specific to that class member's claim, even if it cannot do so for some other class members. Given that the defendant had adequate notice of the particular class member's claims, the purpose of the statute of limitations is satisfied with respect to the claims of that particular class member, and thus it is appropriate to extend the benefit of class action tolling to that particular defendant regardless of the adequacy of the notice received by the defendant of the claims of other putative class members.

### D. *Chardon v. Soto* and the Tolling Effect of *American Pipe* Class Action Tolling

Petitioners' final argument on the issue of class action tolling is that, even if we were to adopt *American Pipe* class action tolling, the tolling effect of the *American Pipe* class action tolling rule, as articulated by the Supreme Court in *Chardon,* is such that respondents' claims would not be ren-

dered timely by the rule. Petitioners' argument rests on a misreading of *Chardon*.

In *Chardon*, the Court had to determine the tolling effect of a putative class action filed in the United States District Court for Puerto Rico under 42 U.S.C. § 1983. *See Chardon*, 462 U.S. at 651–52, 103 S.Ct. at 2613. The Court began by observing that in a § 1983 action, the applicable statute of limitations is provided by state law unless the state limitations law is inconsistent with federal law. *Id.* at 655–56, 103 S.Ct. at 2615. In light of this, the Court needed to decide whether, and if so to what extent, *American Pipe* constituted federal law that would supercede Puerto Rican law governing the tolling effect of the filing of a putative class action. *Id.* at 656, 103 S.Ct. at 2616.

The petitioners in *Chardon* argued that *American Pipe* established a uniform federal rule concerning the tolling effect of class actions filed in federal courts, and that under this rule the filling of a putative class action simply suspends the running of the applicable limitations period from the time which the putative class action is filed to the time that class certification is denied. *Id.* The United States Court of Appeals for the First Circuit, however, concluded that the tolling effect should be determined by reference to Puerto Rican law, under which the effect of tolling a statute of limitations is that the statutory limitations period begins to run anew once the tolling ceases. *Id.* at 655, 103 S.Ct. at 2615. The Supreme Court affirmed the First Circuit, reasoning that *American Pipe* "simply asserts a federal interest in assuring the efficiency and economy of the class action procedure," and that, consequently, this federal interest is satisfied so long as under the applicable state law governing the tolling effect of the filing of a putative class action "each unnamed plaintiff is given as much time to intervene or file a separate action as he would have under a state savings statute applicable to a party whose action has been dismissed for reasons unrelated to the merits...." *Id.* at 661, 103 S.Ct. at 2618. The rule under Puerto Rican law, which, under the First Circuit's interpretation of Puerto Rican law, started the running of the limitations

anew once class certification was denied, provided "unnamed class members the same protection as if they had filed actions in their own names which were subsequently dismissed," so it satisfied this interest. *Id.* at 661, 103 S.Ct. at 2619.

Petitioners argue that *Chardon* held that, under *American Pipe,* the tolling effect of the filing of a putative class action is to give putative class members the same number of days to file suit or intervene after denial of class certification as they would have to refile a complaint under the applicable state savings statute, and that we should, in adopting *American Pipe,* adopt this holding as well. As the discussion of *Chardon* above makes clear, however, this is not the holding of *Chardon.* Rather, what *Chardon* held is that when under a specific federal statutory cause of action the statute of limitations applicable to that action is provided by state law, *American Pipe* requires that putative class members must have *at least* as much time to file individual suits or to intervene as they would under the applicable state savings statute. Under *Chardon,* if a state provides that the filing of a putative class action carries a tolling effect that results in *more* time for putative class members to file complaints or intervene after the denial of class certification than the state savings statute provides for refiling of complaints dismissed without prejudice, then the time period provided for in the state rule on the tolling effect of the class action complaint would apply in federal court, not the time period for refiling provided for in the state savings statute.

*Chardon,* then, does not speak to the issue of the tolling effect of the class action tolling rule. That is a matter of state law, and consequently is for us to decide. To the extent that petitioners' argument is that the tolling effect of a denial of class certification is simply to give putative class members the thirty-day period provided for in Md. Rule 2–101(b) to file an individual complaint or to intervene in the underlying action, we are not persuaded. In our view, a thirty-day period is not sufficiently long because it may actually result in some putative class members having *less* time to file their claims than they would have had if a putative class action covering their

claims had never been filed.[11] A rule that permits such a counterintuitive result is not fair to prospective plaintiffs. Further, such a rule is inconsistent with the presumptive intent of the Legislature that, in enacting a statute of limitations with a certain prescribed limitations period, a plaintiff will have at least that much time to file suit.[12]

■ Although we do not definitively resolve the issue of the precise tolling effect of the class action tolling rule we adopt today, we do hold that the tolling effect of the rule must provide at least as much time as is provided if the tolling effect is the suspension of the running of the applicable limitations period during the pendency of the putative class action.[13] Accordingly, we hold that if the conditions for the application of class action tolling are met, the filing of a class action complaint suspends the running of the statute of limitations at minimum from the time the putative class action is filed until the time that class certification is denied.[14] This rule avoids the potentially unfair and counterintuitive results

---

11. For example, suppose that plaintiff P's cause of action for claim C accrues on January 1, 2007, there is a three year statute of limitations for claims like C, a putative class action that includes P in the putative plaintiff class and covers claim C is filed on January 1, 2008, and class certification is denied on June 1, 2008. If we adopted petitioners' proposal concerning the tolling effect of class action tolling, then under these facts, P would have only until July 1, 2008 to file an individual suit or to intervene to pursue claim C, even though P would have had until January 1, 2010 to file suit on C if the class action had not been filed.

12. Unlike judicially recognized tolling exceptions that lengthen statutory limitations periods, there is, to the best of our knowledge, no judicially created doctrine recognized in any jurisdiction that shortens a statutory limitations period, and there is no such doctrine in Maryland law.

13. Thus, we leave for another day the issue of whether, and if so under what circumstances, we might conclude that the pendency of a putative class action should provide a putative class member with more time than is provided by a suspension rule.

14. Some courts have also held that if a putative class action is filed, class certification is denied, and the denial of class certification is appealed, the statute of limitations is tolled until the denial of class

that could occur under petitioners' proposed tolling effect rule. Furthermore, this rule is in accord with our prior cases recognizing tolling exceptions. In *Bertonazzi*, where we held that a statute of limitations for the filing of a claim against a decedent's estate was tolled because the claim had been filed in the wrong venue, we held that the tolling effect of the filing of the claim in the wrong venue was to suspend the running of the statute of limitations from the time of the filing of the complaint in the improper venue to the time of the dismissal of the original complaint for lack of venue. *See Bertonazzi*, 241 Md. at 366, 216 A.2d at 726. We see no reason to give a different tolling effect to the class action tolling rule we recognize today.

### E. Application to the Facts of this Case

Applying the foregoing principles, we have little difficulty in concluding that the filing of the *Philip Morris* class action tolled Mr. Christensen's claims against the *Philip Morris* petitioners, and that the effect of this tolling is to render respondents' claims against these petitioners timely.

■ Most of the preconditions for the application of class action tolling are not in dispute. Mr. Christensen was a member of the *Philip Morris* putative class. With the exception of Giant, all of the petitioners were defendants in *Philip Morris*. All of the causes of action asserted by respondents against the *Philip Morris* petitioners in the case *sub judice* were asserted in the *Philip Morris* class action complaint.[15]

---

certification is affirmed on appeal. *See, e.g., Davis v. Bethlehem Steel Corp.*, 600 F.Supp. 1312, 1316 (D.Md.1985). Under Maryland law, however, a circuit court's ruling on a class certification issue is typically a nonappealable interlocutory order, and hence is reviewable only after entry of a final judgment in the underlying action. *See Philip Morris*, 358 Md. at 714–15, 752 A.2d at 213–14. Thus, we see no reason to extend the rule to toll the statute of limitations during the pendency of an appeal of denial of class certification, as, in Maryland, such appeals will ordinarily be dismissed for lack of appellate jurisdiction.

**15.** This is so with the exception, of course, of the counts for wrongful death, which are discussed *infra*.

Although the parties dispute when Mr. Christensen's claims against the *Philip Morris* petitioners accrued, they do not dispute that his claims did not accrue prior to 1998. Thus, the statute of limitations for Mr. Christensen's claims against the *Philip Morris* petitioners asserted on his behalf in the original class action was suspended from the date his actions accrued until May 16, 2000, when this Court issued its mandate in *Philip Morris* vacating the Circuit Court's class certification Order. *See Philip Morris,* 358 Md. at 788–89, 752 A.2d at 254–55. Accordingly, if the filing of the *Philip Morris* class action complaint tolled Mr. Christensen's claims, respondents' survival claims against the *Philip Morris* petitioners were timely filed when respondents initiated the survival claims in the instant case on August 13, 2001, as they would have had until May 16, 2003 to file their claims. *See Georgia–Pacific,* 394 Md. at 96–97, 904 A.2d 511 (under Maryland law, statutes of limitation apply to survival claims).

The one remaining question is whether the *Philip Morris* petitioners received adequate notice of Mr. Christensen's claims. We conclude that they did. The class action complaint in *Philip Morris* defined the putative plaintiff class as including all Maryland residents "who have suffered or continue to suffer from physical injuries or disease caused by smoking cigarettes or using smokeless tobacco products...." *Philip Morris,* 358 Md. at 700, 752 A.2d at 206. The *Philip Morris* petitioners possessed information that was sufficient for them to determine that Mr. Christensen was a member of this class, as Mr. Christensen actively participated in the *Philip Morris* litigation by providing an affidavit and giving deposition testimony in which he stated that he had a history of smoking and had been diagnosed with lung cancer. Given that the *Philip Morris* petitioners possessed this information about Mr. Christensen, there is no question that they were given adequate notice of his claims by the *Philip Morris* class action complaint.[16]

---

16. We express no opinion as to whether the complaint would have given the *Philip Morris* petitioners adequate notice in the absence of

Accordingly, we hold that the necessary conditions for the application of class action tolling of Mr. Christensen's claims were met, and that, as a result, respondents' survival claims against the *Philip Morris* petitioners are timely.

■ Finally, we hold that respondents' wrongful death claims against the *Philip Morris* petitioners are also timely. The Circuit Court, rejecting class action tolling, dismissed these claims as well as the survival claims, reasoning that, under the Wrongful Death Statute, Md.Code (1973, 2002 Repl. Vol., 2005 Cum.Supp.), § 3–901 *et seq.* of the Courts and Judicial Proceedings Article ("CJP"), respondents could not maintain these claims if Mr. Christensen's claims would have been time-barred at the time respondents' filed their wrongful death claims if he had not previously died. Given our holding that Mr. Christensen's claims were not time-barred until May 16, 2003, after the time respondents wrongful death claims had all been filed, the Circuit Court's conclusion was erroneous, even assuming that it had correctly interpreted the Wrongful Death Statute.

The Circuit Court's interpretation of the Wrongful Death Statute is, however, erroneous. Respondents' wrongful death claims would not have been barred by virtue of the expiration of the limitations period for Mr. Christensen's claims unless the limitations period on his claims had run prior to the time of his death. *See Georgia–Pacific,* 394 Md. at 94–95, 904 A.2d 511 (holding that grant of summary judgment in favor of defendants on a wrongful death claim was improper notwithstanding propriety of grant of summary judgment in favor of defendants on survival claim on grounds of limitations, where decedent's cause of action was held to accrue in 1997, wrongful death claims were filed in 2003, and applicable statute of limitations was three years); *see also Mills v. Int'l Harvester Co.,* 554 F.Supp. 611, 613 (D.Md.1982) (applying Maryland law, and concluding that wrongful death action did not lie because

---

Mr. Christensen's participation in the *Philip Morris* class action litigation.

there was no "wrongful act" within meaning of statute because statute of limitations for underlying claim had run prior to time of decedent's death). This is so because the determination as to whether the decedent would have been entitled to "maintain an action and recover damages," and hence whether there is a "wrongful act" within the meaning of CJP § 3–901(e), is made at the time of the decedent's death. *See Smith v. Gross,* 319 Md. 138, 143 n. 4, 571 A.2d 1219, 1221 n. 4 (1990) (observing that "if a decedent could not have brought a cause of action for injury *at the time of death,* the wrongful death action ... is precluded" (emphasis added) (citation and internal quotation omitted)).

Given that the pendency of the *Philip Morris* class action tolled the statute of limitations on Mr. Christensen's claims against the *Philip Morris* petitioners, the statute of limitations applicable to Mr. Christensen's claims does not serve as a bar to respondents' wrongful death claims against the *Philip Morris* petitioners. These wrongful death claims, therefore, are timely so long as they are timely under CJP § 3–904(g)(1), which gives a party three years after the death of the decedent to initiate a wrongful death action. *See Georgia–Pacific,* 394 Md. at 86–87, 904 A.2d 511. Inasmuch as respondents' wrongful death actions against the *Philip Morris* petitioners were all initiated within three years of Mr. Christensen's death in January 2001, they are timely.

## IV.

We now turn to the second issue in the case, whether the Circuit Court granted summary judgment properly to petitioner Giant on respondents' claims against Giant. Giant was not a defendant in the *Philip Morris* class action, and therefore respondents cannot appeal to class action tolling to render their claims against Giant timely. The dispute between the parties concerns the time at which Mr. Christensen's causes of action against Giant arising out of his lung cancer accrued. The answer to this question, in turn, depends upon application of the discovery rule to the factual record before the Circuit Court when it granted summary judgment.

Subsequent to the Court of Special Appeals's opinion below vacating the Circuit Court's grant of summary judgment to Giant and remanding for reconsideration in light of *Benjamin v. Union Carbide*, we granted certiorari and affirmed the judgment of the Court of Special Appeals in *Georgia–Pacific.* In *Georgia–Pacific*, we endorsed the reasoning of the Court of Special Appeals, holding that, with respect to occupational exposure to asbestos, a claimant, including a wrongful death claimant, is placed on inquiry notice of the causation element of a cause of action to recover for injuries resulting from mesothelioma when the claimant has (1) knowledge that the person whose injury forms the basis for the claim has been diagnosed with mesothelioma, and (2) knowledge of exposure to asbestos. *See Georgia Pacific,* 394 Md. at 95–97, 904 A.2d 511. We further agreed with the Court of Special Appeals that the rationale for this holding is that, given the general state of knowledge concerning the relation between asbestos exposure and disease in 1997, the time the decedent came to know of his diagnosis of mesothelioma and his asbestos exposure, "a reasonable person would have investigated and discovered a causal connection between mesothelioma and asbestos exposure...." *See id.* at 95–96, 904 A.2d 511 (citing *Benjamin,* 162 Md.App. at 205, 873 A.2d at 481).

We agree with the Court of Special Appeals that the Circuit Court should reconsider the propriety of granting summary judgment to Giant in light of the subsequent appellate refinement of the inquiry notice rule. Accordingly, because our opinion in *Georgia–Pacific* affirming the Court of Special Appeals is now the controlling authority on this issue, we vacate the judgment of the Court of Special Appeals, and remand the case to the Court of Special Appeals with instructions to vacate the Circuit Court's grant of summary judgment in favor of Giant, and to remand the case to the Circuit Court for reconsideration of the issue of whether petitioner Giant is entitled to summary judgment in light of *Georgia–Pacific.*

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS*

**270**

*TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY RELATED TO GIANT FOOD LLC AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PETITION-ERS.*