17 A.3d 744

**Shailendra KUMAR, M.D., P.A.**

v.

**Anand M. DHANDA.**

**No. 2934, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

April 5, 2011.

338

Michael J. McAuliffe (Ethridge, Quinn, Kemp, McAuliffe, Rowan, & Hartinger, on the brief), Rockville, MD, for appellant.

Angus R. Everton (Robert C. Morgan, Morgan, Carlo, Downs & Everton PA, on the brief), Hunt Valley, MD, for appellee.

Panel: EYLER, DEBORAH S., MEREDITH, and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

In the Circuit Court for Montgomery County, Shailendra Kumar, M.D., P.A. ("Dr. Kumar"), the appellant, sued Anand M. Dhanda, M.D., the appellee, in two counts, for breach of contract and breach of a covenant not to compete contained in the same contract. The pertinent contract included a mandatory non-binding arbitration clause. Dr. Dhanda moved to dismiss the complaint on the ground that the claims were barred by the applicable statute of limitations. Dr. Kumar opposed the motion, asserting that his causes of action did not accrue until the parties completed arbitration. The circuit court granted the motion. On appeal, Dr. Kumar asks wheth-

er the circuit court erred in doing so. For the following reasons, we conclude that it did not, and shall affirm the judgment.

## FACTS AND PROCEEDINGS

Dr. Kumar and Dr. Dhanda are urologists. On August 31, 2001, they entered into a written employment contract ("Agreement") whereby Dr. Dhanda agreed to work for Dr. Kumar's practice. The term of the Agreement was from September 4, 2001, through August 31, 2002.

The Agreement, which was drafted by Dr. Kumar without counsel, included the following mandatory non-binding arbitration clause:

> All disputes arising out of this Agreement [with an exception not applicable here], shall be resolved pursuant to arbitration conducted in accordance with the Maryland Uniform Arbitration Act, in Baltimore, Maryland. Both parties can go to court if not satisfied by the decision of the Maryland Uniform Arbitration Act.

The Agreement also included a non-competition clause that prohibited Dr. Dhanda from engaging in the practice of urology within specified miles of certain offices of Dr. Kumar and from seeking or accepting previous patients of Dr. Kumar for three years after his (Dr. Dhanda's) termination (voluntary or involuntary) from employment.

The working relationship between Dr. Kumar and Dr. Dhanda did not go well and ended on August 31, 2002. Soon thereafter, in the Circuit Court for Anne Arundel County, Dr. Dhanda sued Dr. Kumar for breach of the Agreement. Dr. Kumar filed a motion to compel arbitration and to dismiss, which was granted on April 3, 2003.

Nothing happened for a little more than two years. Then, on April 29, 2005, in the Circuit Court for Baltimore City, Dr. Kumar sued Dr. Dhanda in three counts. In count 1, he petitioned to compel arbitration. In count 2, he alleged breach of the Agreement, generally, and in count 3 he alleged breach of the non-competition provision of the Agreement.

There followed a period of delay in serving Dr. Dhanda. Upon being served and answering, Dr. Dhanda moved to dismiss counts 2 and 3 for improper venue. By agreement, Dr. Kumar withdrew those counts, without prejudice. On November 20, 2006, after a bench trial on count 1, the court granted the petition to compel arbitration and appointed an arbitrator.

The arbitration was held on March 28, 2008. The contract claims by Dr. Kumar and a cross-claim by Dr. Dhanda were presented. On June 20, 2008, the arbitrator issued his award. He denied all relief to Dr. Kumar and granted Dr. Dhanda an award of $868 for unpaid disability insurance premiums.

On March 16, 2009, Dr. Kumar filed the lawsuit in the case at bar for, as stated above, breach of the Agreement and breach of the non-competition clause in the Agreement. On September 10, 2009, Dr. Dhanda filed a motion to dismiss, asserting that the claims were barred by the three-year general limitations period in Md.Code (2006), section 5–101 of the Courts and Judicial Proceedings Article ("CJP"). After a hearing and receiving supplementary briefing from the parties, the court granted the motion to dismiss. This timely appeal followed.[1]

## STANDARD OF REVIEW

■ A party may move to dismiss a complaint pursuant to Rule 2–322(b)(2) when the well-pleaded facts and all reasonable inferences that they support do not state a claim upon which relief may be granted as a matter of law. In the case at bar, Dr. Dhanda raised the affirmative defense of limitations and further asserted that, on the facts alleged in the complaint, Dr. Kumar's claims were time-barred, as a matter of

---

1. The notice of appeal was filed more than 30 days after the entry of the court's order granting the motion to dismiss. The courthouse was closed for several days, however, including the deadline day for filing the notice of appeal. The notice of appeal was filed on the first day that the court house was open for business thereafter, and therefore was timely. *See* Md. Rule 1–203(a)(2).

law. We review the court's decision to grant the motion to dismiss for legal correctness. *See Shah v. HealthPlus, Inc.,* 116 Md.App. 327, 332–33, 696 A.2d 473 (1997).

## DISCUSSION

The general statute of limitations for a civil action in Maryland is three years. It is set forth in CJP section 5–101, which states:

> A civil action at law shall be filed within three years from the date it *accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced.

(Emphasis added.)

Dr. Kumar contends the language of the Agreement precluded him from bringing any action in court until the parties had completed non-binding arbitration. Therefore, his causes of action against Dr. Dhanda did not come into existence, and hence did not "accrue" within the meaning of CJP section 5–101, until arbitration was completed on June 20, 2008. At that point, limitations started to run. Accordingly, he had until June 20, 2011, to bring suit against Dr. Dhanda, and he filed suit well within that time. For that reason, the circuit court erred in granting the motion to dismiss.

Dr. Dhanda responds that Dr. Kumar's causes of action for breach of contract "accrued," within the meaning of CJP section 5–101, when the alleged breaches occurred. Therefore, the latest possible accrual date for the "regular" breach of contract claim was August 31, 2002, and the latest possible accrual date for the non-competition clause breach of contract claim was August 31, 2005 (as the clause remained in effect post-termination, until August 31, 2005). Within the latter time frame, the non-binding arbitration already had been concluded. In any event, the three-year limitations period for both claims had expired before March 16, 2009, when the present suit was filed. Therefore, the circuit court properly granted the motion to dismiss.

■■■■ "Ordinarily, our [general three-year] statute of limitations begins to 'accrue' on the date of the wrong." *Murphy v. Merzbacher*, 346 Md. 525, 532, 697 A.2d 861 (1997). In a breach of contract action, that date ordinarily is the date the contract was breached. *See Hariri v. Dahne*, 412 Md. 674, 688 n. 8, 990 A.2d 1037 (2010). There is no dispute that the alleged breaches of contract by Dr. Dhanda took place more than three years before suit was filed in this case, and that Dr. Kumar knew of the alleged breaches when they took place.[2]

Relying upon cases such as *James v. Weisheit*, 279 Md. 41, 367 A.2d 482 (1977), *Henry's Drive–In, Inc. v. Pappas*, 264 Md. 422, 287 A.2d 35 (1972), and *W., B. & A. Electric RR Co. v. Moss*, 130 Md. 198, 100 A. 86 (1917), Dr. Kumar asserts that the proper test for when a cause of action accrues is when the plaintiff "could have first ... maintained his action to a successful result," *Moss*, 130 Md. at 205, 100 A. 86; and pursuant to the language of the Agreement he could not have maintained his breach of contract claims to successful results until an arbitrator had decided the disputes between the parties.

We disagree with Dr. Kumar's analysis of the meaning of "accrual," and his use of the cases cited above to support it. In these cases, the primary question was whether all the elements of the causes of action in question had arisen, as until that had happened, the causes of action could not have accrued.

In *James*, a seller conveyed real property to a buyer, taking back a second mortgage, which was to be junior to the buyer's $90,000 purchase money mortgage. Instead of recording a $90,000 first mortgage, the buyer recorded a $250,000 first mortgage. Soon after the sale, the seller learned that the

---

2. The "discovery rule" operates as an exception to the accrual rule when a plaintiff does not know, or could not through the exercise of reasonable diligence know, of the wrong, whether the wrong is a breach of a tort duty or a breach of contract. *Poffenberger v. Risser*, 290 Md. 631, 635–36, 431 A.2d 677 (1981). The parties agree that the discovery rule exception has no application to the case at bar.

buyer had done so. Nine years later, the seller sued the buyer for fraud. The buyer maintained that the fraud claim was time-barred. The seller argued that it was not, because all of the elements of a cause of action for fraud had not arisen more than three years before suit was filed. Specifically, the seller asserted that he had not suffered a compensable injury (one element of fraud) when the $250,000 first mortgage was recorded. The Court of Appeals disagreed. It held that the seller had been injured when the $250,000 first mortgage was recorded, and therefore all the elements of a cause of action for fraud could have been proven at that time. The cause of action thus had accrued at that time, and limitations had started to run. By the time suit was filed, the three-year limitations period had expired.

Similarly, in *Henry's Drive–In*, an action alleging that a tenant had breached its lease by not paying real property taxes on the premises, the question was whether the cause of action did not arise until the lessor made a demand for payment, because until such time there was no obligation to pay. The Court of Appeals held that demand was not necessary to give rise to a cause of action because the lessee's obligation to pay was clear from the lease itself and the lessor thus could have acted without making a demand. The cause of action therefore accrued for each year upon the nonpayment of the taxes due for that year, and the lessor's claims for unpaid taxes more than three years before suit was filed were time-barred.

Finally, in *Moss*, the plaintiff in a *quantum meruit* suit took the position that he had not completed the services for which he was seeking compensation until less than three years before he brought suit, and therefore his claim was not barred by limitations. Acknowledging that that was the central issue in determining whether the claim was time-barred, the Court agreed with the trial court that disputes of fact made that issue a jury question. If the jury found that the services were completed more than three years before suit was filed, the claim would be time-barred; if it did not, the claim would be viable.

In the case at bar, unlike in the cases Dr. Kumar relies upon, there is no dispute that all the elements of his causes of action for breach of contract (contractual obligation, breach, and damages) existed, if at all, no later than August 31, 2002, for the "regular" breach of contract claim and no later than August 31, 2005, for the breach of the non-competition clause claim. Therefore, by those times at the very latest, Dr. Kumar "could have maintained his [causes of] action to a successful result," under the holdings of *James, Henry's Drive–In,* and *Moss,* so his causes of action had "accrued."

■ The fact that Dr. Kumar and Dr. Dhanda had contracted, pursuant to the Agreement, to engage in non-binding arbitration as a condition precedent to bringing suit in circuit court did not mean that Dr. Kumar's causes of action (or Dr. Dhanda's causes of action) did not accrue under CJP section 5–101 when all of their elements had arisen. (Indeed, both parties' causes of action necessarily had to have accrued even before arbitration was undertaken; otherwise the arbitrator would not have had the claims before him to resolve.) It meant only that the parties, and each of them, had to take timely steps to engage in arbitration before limitations expired; enter into a further agreement to toll limitations; or file suit and request a stay pending arbitration.[3]

---

**3.** With regard to filing suit and seeking a stay pending arbitration, we disagree with Dr. Kumar's assertion that the language of the Agreement, permitting either party to "go to court if not satisfied by the [arbitrator's] decision," meant that he was precluded from filing suit and seeking a stay of proceedings pending completion of arbitration. The permissive language, "can go to court," does not prohibit a party from filing suit prophylactically to guard against the running of the statute of limitations.

The Maryland Uniform Arbitration Act, codified at CJP sections 3–201 through 3–234, requires a circuit court to "stay any action or proceeding involving an issue subject to arbitration if: (1) A petition for order to arbitrate has been filed; or (2) An order for arbitration has been made." CJP § 3–209(a). In the first action between these doctors—the 2003 suit brought by Dr. Dhanda against Dr. Kumar—the court dismissed Dr. Dhanda's claim upon ruling that it was subject to arbitration, without imposing a stay. Dr. Dhanda did not seek a stay and did not appeal the court's ruling. In the second action between these doctors—the 2005 suit brought by Dr. Kumar against Dr. Dhan-

Accordingly, Dr. Kumar's causes of action under the Agreement accrued more than three years before suit was filed, and therefore were time-barred when suit was filed. Only if the limitations period was suspended after it started to run—*i.e.*, limitations was tolled either by statute or by the doctrine of judicial tolling—would the outcome be otherwise. *See Turner v. Kight*, 406 Md. 167, 177, 182, 957 A.2d 984 (2008) (explaining that "tolling" of a statute of limitations means that the limitations period is suspended and does not run; and the days remaining in the limitations period will begin to be counted after the tolling ceases).[4]

As there is no statutory tolling provision applicable in this case,[5] limitations only would have been tolled if a judicially recognized tolling exception applied. In *Philip Morris v.*

---

da—the underlying claims were voluntarily dismissed without prejudice because they were not brought in the proper venue. Therefore, when the court granted Dr. Kumar's remaining claim, *i.e.*, his petition to compel arbitration, there were no underlying claims to stay.

In any event, as the time at which the limitations period would expire approached, there was nothing to prevent Dr. Kumar from filing his claims in the proper jurisdiction and asking the court to stay them pending arbitration.

4. In *Turner*, the Court was called upon to interpret 28 U.S.C.S. section 1367(d), the federal statute regarding tolling of state law claims brought in federal district court that were in that court's "supplemental jurisdiction," but over which the federal court ultimately did not exercise jurisdiction. Rejecting an argument that the statute merely extended the limitations period, the Court held that the statute suspended the running of limitations until 30 days after the conclusion of all federal proceedings, including appellate proceedings. It noted that that interpretation was in harmony with Md. Rule 2–101(b), which states:

Except as otherwise provided by statute, if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the statute of limitations required to be applied by that court, an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.

5. *See e.g.* CJP § 5–202 (providing that, "[i]f a debtor files a petition in insolvency which is later dismissed, the time between the filing and the dismissal is not included in determining whether a claim against the debtor is barred by the statute of limitations.").

*Christensen,* 394 Md. 227, 905 A.2d 340 (2006), the Court of Appeals commented that it has been loathe to recognize tolling exceptions and only has done so "when the tolling exception was consistent with the purposes of statutes of limitations." *Id.* at 237, 905 A.2d 340.

In *Christensen,* the decedent died of lung cancer in January 2001. In 1999, he had participated in a pending class action tort case that had been filed in Baltimore City in 1996 against certain cigarette manufacturers and distributers. He had not been named as a plaintiff in that suit, but had given a *de bene esse* deposition and otherwise had taken part in activities connected to the case. The class action was certified by the circuit court. Ultimately, in an appeal in a mandamus action, the Court of Appeals directed the circuit court to vacate the certification order. *Philip Morris v. Angeletti,* 358 Md. 689, 752 A.2d 200 (2000).

In August 2001, the decedent's wife, individually and as personal representative of his estate, brought a wrongful death action and a survival claim against the same cigarette makers and distributors (plus an additional distributor). The circuit court granted summary judgment in favor of the defendants on limitations, concluding that the decedent had been on inquiry notice of his claims by the spring of 1998. The primary question before the Court of Appeals was whether "class action tolling" applied to toll the period of limitations for the decedent's claims. That is, whether by judicial exception the limitations period for the decedent's claims was suspended for the period of time in which the class action suit was pending. The Court of Appeals held that the decedent's claims indeed were tolled from the time they accrued (which everyone agreed did not happen before the class action suit was brought), until the date of the mandate of the Court of Appeals in *Angeletti* that effectively decertified the class. Therefore, the survival claim was not time-barred, as the decedent's claims had not been time-barred. (The Court also held that the wrongful death claim was not time-barred because it was filed within three years of the death and the decedent's claims were not time-barred before then.)

In holding that "class action tolling," as adopted in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and as extended in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), applied, the *Christensen* Court explained that it will recognize exceptions to statutes of limitations sparingly, and only in limited situations, so as not to encroach on the province of the legislature. It discussed *Bertonazzi v. Hillman*, 241 Md. 361, 216 A.2d 723 (1966), in which it had recognized a tolling exception. There, a claimant had failed to file in the correct jurisdiction a claim against a decedent's estate within the time-frame permitted by statute. The claimant had timely filed such a claim, but in the wrong jurisdiction. By the time he filed the claim in the proper jurisdiction, the limitations period had expired.

Citing two reasons, the *Bertonazzi* Court held in that situation that the limitations period was tolled for the period of time the claim was pending in the wrong jurisdiction. First, at the time Maryland was one of the few states without a savings rule that would have kept the claim from being time-barred. Second, suspending the running of limitations during the pendency of the claim filed in the wrong jurisdiction was consistent with the underlying purpose for statutes of limitation, which is fairness to the defendant. Such was the case because the defendant was as fully on notice of the claim from its having been filed in the wrong jurisdiction as he would have been if the claim had been filed in the right jurisdiction.

The *Christensen* Court gleaned from *Bertonazzi* the general principle that courts will recognize a tolling exception to a statute of limitations if "(1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations." 394 Md. at 238, 905 A.2d 340. The Court concluded that the tolling exception principle was satisfied because tolling was necessary to protect the class action procedures adopted by rule in Maryland, and therefore policy considerations militated in favor of tolling;

and because tolling was consistent with the purposes of a statute of limitations given that, in the class action suit, the defendants had been made aware of the facts and legal theories on which the claims against them were based.

The Court pointed out that prior cases in which it had declined to recognize a tolling exception to a statute of limitations were consistent with the general principle established in *Bertonazzi*. In *Walko Corp. v. Burger Chef Systems, Inc.*, 281 Md. 207, 378 A.2d 1100 (1977), for example, the circuit court had ruled that the plaintiff's claim was barred by the general three-year statute of limitations. On appeal, the plaintiff argued that the statute was tolled during the time in which it had sought to intervene in a federal district court suit against the same defendant. The *Walko* Court rejected that argument, reasoning that the proposed tolling was not supported by persuasive authority or argument because, if allowed, a plaintiff " 'could effectively postpone the running of the statute [of limitations] for an indefinite period of time.' " 394 Md. at 240, 905 A.2d 340 (quoting *Walko*, 281 Md. at 215, 378 A.2d 1100). The *Walko* Court further reasoned that, given that the late filing by the plaintiff was a consequence of his own failure to exercise ordinary diligence, permitting tolling would not be consistent with the purpose of "statutes of limitations, which embody 'a legislative judgment of what is deemed an adequate period of time in which "a person of ordinary diligence should bring his action." ' " *Id.* (quoting *Walko*, 281 Md. at 215, 378 A.2d 1100) (in turn quoting *Ferrucci v. Jack*, 255 Md. 523, 526, 258 A.2d 414 (1969)).

In the case at bar, judicial tolling would not be in keeping with the principle applied in *Bertonazzi* and reaffirmed by the Court of Appeals in *Christensen*. First, there is no "persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception" in this case. *Christensen*, 394 Md. at 238, 905 A.2d 340. To be sure, arbitration is favored in Maryland as a private procedure for parties to resolve disputes. *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 103, 468 A.2d 91 (1983). "The arbitration

process ... provides a speedy, informal, relatively inexpensive, and private procedure for resolving controversies arising out of commercial transactions." *Marsh v. Loffler Housing Corp.,* 102 Md.App. 116, 124, 648 A.2d 1081 (1994).

Nevertheless, arbitration agreements are private contracts the terms of which are subject to negotiation by the parties. Limitations is an affirmative defense that will be waived if not raised, and therefore is not jurisdictional. *See* Md. Rule 2–323(g)(15); *Brooks v. State,* 85 Md.App. 355, 364, 584 A.2d 82 (1991). The parties negotiating a mandatory non-binding arbitration agreement thus are free to agree to a provision tolling limitations generally or in the event the arbitration process is not concluded before limitations would run. If the parties so agree, it is known from the outset that limitations will not be a bar. If the parties do not so agree, their situation is likewise clear. Limitations will apply (assuming it is raised as an affirmative defense), and therefore any party wanting to make certain that a remedy in circuit court will be available will need to take steps to ensure that arbitration is completed before limitations runs or to file suit and request a stay within the limitations period if timely completion appears unlikely.

In any event, the private nature of arbitration agreements allows parties to contractually protect themselves against the running of limitations. Their ability to do so militates against a judicial policy that would suspend the running of limitations merely because an arbitration the parties agreed to undertake was not completed before limitations expired. Such a policy simply is not necessary to protect the use of the arbitration process in Maryland, or to advance any other state interest. Nor is there any persuasive Maryland authority to support judicial tolling in such a situation.

In addition, as the *Christensen* Court pointed out in discussing *Walko,* a proposed tolling rule that "would permit a plaintiff to 'effectively postpone the running of the statute [of limitations] for an indefinite period of time' " does not comport with sound judicial policy. 394 Md. at 240, 905 A.2d 340

(quoting 281 Md. at 215, 378 A.2d 1100). In the case at bar, judicial tolling for the period in which the parties were participating in arbitration could produce a similar indefinite postponement of limitations, as the Agreement did not set a time by which arbitration would have to be commenced.

Second, recognizing a tolling exception for a breach of contract claim when a contract calls for mandatory non-binding arbitration would at most be partially "consistent with the generally recognized purposes for the enactment of statutes of limitations." *Christensen*, at 238, 905 A.2d 340. During the pendency of the arbitration, the defendant would be on notice of the various claims against him, which would advance the primary purpose of statutes of limitation, which is to protect defendants against stale claims. Yet, for the same reasons we just have discussed, when a contract such as the one in this case does not place a deadline on the commencement of the required arbitration, recognizing a tolling exception would effectively allow a party to postpone the running of limitations indefinitely, thus encouraging delay and failure to exercise ordinary diligence in the prosecution of claims, to the detriment of defendants.

Accordingly, we conclude that the judicial tolling principle recognized by the Court of Appeals in *Bertonazzi* and restated by it in *Christensen*, when applied to the case at bar, does not support a suspension of the three-year statute of limitations for Dr. Kumar's breach of contract claims for the period of time until arbitration was completed pursuant to the Agreement.

Finally, our research has uncovered but one case in the country that has addressed the issue of non-statutory tolling of the statute of limitations for a breach of contract action when the parties to the contract agreed to participate in mandatory non-binding arbitration of disputes arising under the contract.

In *American Federation of State, County, and Municipal Employees, AFL–CIO v. Board of Education*, 457 Mich. 74, 577 N.W.2d 79 (1998), labor unions sued various employers

alleging that they had breached a collective bargaining agreement ("CBA"). The CBA included a multi-step mandatory grievance procedure culminating in arbitration that was nonbinding (although there was some initial dispute between the parties as to whether it was binding or nonbinding). The trial court granted summary judgment in favor of the employers on the ground that the action for breach of the CBA was timebarred. The intermediate appellate court reversed, holding that the statute of limitations was equitably tolled until the conclusion of the grievance process.

A fractured Michigan Supreme Court agreed with the intermediate appellate court and held that equitable tolling applied. The majority, remarking that the case was unique in the country in that it is highly unusual for a CBA to include a mandatory grievance procedure with non-binding arbitration as the final step, opined that if the labor unions' action for breach of the CBA were ruled time-barred, the employees would have been "punish[ed]" "for exhausting th[e grievance] procedures before filing suit." 457 Mich. at 89, 577 N.W.2d 79.

The court's analysis rested on there being a "strong body of [federal labor] case law [favoring] exhaustion of grievance procedures before filing suit." *Id.* at 83, 577 N.W.2d 79. The court quoted the Supreme Court in *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), as follows:

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.... [*U*]*nless the contract provides* otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf.

*Id.* at 85, 577 N.W.2d 79 (emphasis added and citations omitted by *American Federation*). Emphasizing that national labor policy encourages private, rather than judicial, resolution of contractual labor disputes, the court observed that

exhaustion of grievance procedures, which ordinarily are required and exclusive, is necessary to effect that goal. In essence, the court concluded that federal labor policy favoring exhaustion of the grievance procedures provided in CBAs makes completing those procedures so essential that, even when the final step of the procedure is non-binding arbitration, the state statute of limitations for a contract action arising out of the CBA should be equitably tolled until the grievance process has been completed.

In Maryland, equitable tolling only will be applied to "suspend the running of a statute of limitations ... if the defendant holds out an inducement not to file suit or indicates that limitations will not be plead[ed]." *Christensen,* 394 Md. at 241, 905 A.2d 340. In any event, assuming that the *American Federation* court's version of the doctrine of equitable tolling is akin to Maryland's doctrine of judicial tolling, it is clear that the court's decision was driven by federal labor policy, which it considered to be overarching when the cause of action at issue was for breach of a CBA between labor unions and employers. Thus, in that case, there was a persuasive policy reason to justify judicial tolling of the statute of limitations. Here, there is none.

For all of these reasons, we hold that the circuit court properly granted summary judgment in favor of Dr. Dhanda, on the ground that Dr. Kumar's contract claims were barred by the general three-year statute of limitations in CJP section 5–101.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**