*Patriot Construction, LLC v. VK Electrical Services, LLC*
No. 942, September Term, 2021
Filed March 2, 2023. Opinion by Friedman, J.

**HEADNOTES:**

**LIMITATIONS OF ACTIONS > COMPUTATION OF LIMITATIONS PERIOD > ACCRUAL OF RIGHT OF ACTION OR DEFENSE > CONTRACTS > CONSTRUCTION AND OPERATION > CONDITIONS PRECEDENT TO PAYMENT**

When a contract contains a pay-when-paid clause as a condition precedent to payment, a breach of contract action for failure to pay does not accrue until the condition is met.

Circuit Court for Anne Arundel County
Case No. C-02-CV-20-001339

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 942

September Term, 2021

_____

PATRIOT CONSTRUCTION, LLC

v.

VK ELECTRICAL SERVICES, LLC

_____

Wells, C.J.,
Friedman,
Eyler, James R.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Friedman, J.

_____

Filed:  March 2, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

In June 2020, appellee VK Electrical Services, LLC ("VKES") filed a breach of contract action against Patriot Construction, LLC in the Circuit Court for Anne Arundel County, alleging that Patriot had refused to pay VKES for completed subcontract work. Patriot moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial court denied the motion to dismiss but for one count, and the matter proceeded to a bench trial. VKES prevailed, and the trial court awarded it a judgment in the amount of $64,575.09.

On appeal, Patriot asks us to consider whether the trial court erred in: (1) failing to find that VKES did not satisfy a condition precedent contained in the subcontract; (2) failing to find that VKES's claims were barred by the statute of limitations; (3) admitting parol evidence regarding pre-contract discussions; (4) failing to sufficiently state on the record the reasons for its decisions on the contested issues; and (5) denying Patriot's motion to dismiss. For the reasons that follow, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2015, Patriot was working under a contract with the Maryland Procurement Office of the National Security Agency ("MPO") to provide general contractor services for an NSA project at Fort Meade. After its original electrical subcontractor was unable to complete the work, Patriot entered into a subcontract with VKES, in which VKES agreed to perform electrical work for the project for a sum of $495,000.

The subcontract between Patriot and VKES explicitly provided that "[n]o alteration, addition, omission or change shall be made in the Work or the method or manner of performance of the Work except upon the written change order of PATRIOT CONSTRUCTION." In addition, an "Important Notice" was incorporated into the subcontract. It detailed that performance of work prior to the full execution of a change order would be done with "**no expectation of monetary compensation from Patriot Construction, LLC for that work**." (emphasis in original). The notice further provided that in the event of "a rare emergency instance" that would require work prior to the full execution of a change order, "permission to proceed shall only be granted by [John Gilmore] or Matthew Timbario." The contract between Patriot and VKES also included a "pay-when-paid provision" which provided that Patriot's receipt of payment from the MPO was a condition precedent to Patriot's payment obligations to its subcontractors. The subcontract was signed by Craig Mills, Director of Operations, on behalf of Patriot and by Vincent Krakat, President, on behalf of VKES.

As work on the project proceeded, Patriot requested that VKES perform fire alarm and other work additional to the duties set forth in its subcontract. The additional work increased VKES's invoiced services by $366,428.09. Two of the additional invoices submitted to Patriot were related to executed change orders, and the remainder were for additional "ticket work" that had not been authorized in writing by Patriot.

VKES completed its work on the project on or about July 20, 2016, and sought payment. Due to the pay-when-paid provision, however, VKES had to wait for Patriot to be paid by the MPO. Patriot received its full payment from the MPO in October 2019. In

April 2020, a representative from Patriot contacted VKES and informed it that Patriot did not submit the additional ticket work to the MPO for approval or payment, and therefore Patriot would not pay VKES for those invoices. Patriot ultimately paid VKES a total of $796,853 but declined to pay the ticket work invoice in the amount of $64,577.15.

In June 2020, VKES filed suit against Patriot seeking damages in the amount of $64,577.15. Its complaint contained counts of: (1) breach of contract; (2) quantum meruit; (3) unjust enrichment; (4) violation of federal prompt payment statute; (5) violation of Maryland prompt payment statute; and (6) violation of Maryland trust fund statute.

Patriot moved to dismiss the complaint with prejudice, asserting that VKES had failed to meet the condition precedent in the subcontract to obtain written authorization for the additional work before proceeding. Patriot further argued that the action was barred by the statute of limitations because VKES had submitted the unpaid invoice to Patriot more than three years prior to the filing of its complaint.

VKES responded to Patriot's motion to dismiss, arguing that its claims should not be dismissed because Patriot "ordered, acknowledged, accepted and benefited from the electrical services VK[ES] performed at the project" and "acquiesced to and waived the subcontract written modification requirement." VKES further argued that, due to the subcontract's pay-when-paid provision, the statute of limitations did not begin to run until October 2019, when Patriot was paid by the MPO and declined to pay VKES. VKES referenced August 2017 email correspondence between it and Patriot, in which Patriot assured VKES that the MPO had approved the invoice, that, while it was "not custom to

3

pay[ ] prior to receiving funds ... Patriot will honor all work completed on the project," and that the funds would be forthcoming in the upcoming weeks.

The trial court held a hearing on Patriot's motion to dismiss on December 7, 2020. At the hearing, Patriot argued that because there was no factual dispute that VKES did not have written approval for the additional ticket work as required by the express terms of the subcontract, VKES had not met the condition precedent to being paid for that work. Patriot also asserted that it had not submitted the invoices for the unpaid $64,577.15 to the MPO and thus Patriot had not been paid for the work, which, under the pay-when-paid provision, would mean it had no duty to pay VKES for the outstanding invoices. In the alternative, Patriot argued that because the ticket work was outside the original subcontract, the pay-when-paid provisions of the subcontract should not apply to extend the statute of limitations. Finally, Patriot argued that because VKES had failed to support its complaint with affidavits relating to any facts outside the record, the court should not consider the exhibits VKES had submitted in support of its claim that Patriot had approved and agreed to pay for the extra work.

In response, VKES argued that the written authorization provision could be waived when, as here, "the parties have a course of conduct throughout the ... project" that evidenced a less formal authorization process. VKES further argued that the complaint sufficiently pleaded facts showing that Patriot had directed VKES to perform additional work outside the contract and noted that the motion to dismiss was the first time Patriot had suggested that VKES had not fulfilled a contractual requirement. VKES argued that the upcoming discovery would disclose "a boat load of emails" showing that the extra fire

4

alarm work was done at Patriot's direction and that at no time did Patriot suggest a written change order was required or that VKES would not be paid for the work. Finally, VKES asserted that the statute of limitations did not begin to run until VKES was on notice that Patriot would not pay according to the terms of the contract, or once Patriot was paid by the owner.

During the hearing, the trial court noted that, because discovery could reveal a pattern of conduct suggesting the written authorization requirement was waived, the motion to dismiss was premature. The court also noted that determining the start date for the statute of limitations would depend on findings to be made later by a judge or jury. At the close of argument, the trial court denied Patriot's motion to dismiss on all counts except for the violation of federal prompt payment statute. VKES later dismissed without prejudice the counts in its complaint alleging breach of Maryland prompt payment statute and breach of Maryland trust fund statute.

The matter proceeded to a bench trial on the remaining counts. Vincent Krakat, owner of VKES, testified that he became involved in the project partway through because the first electrical subcontractor was unable to continue the work. Krakat testified that he was contacted by Dwayne Spriggs, Patriot's then-project manager, who asked VKES to submit a bid. Krakat negotiated the price of the job with Spriggs and testified that Spriggs was "the only person [he] talked to" regarding the project, and he believed Spriggs was authorized to bind Patriot to construction decisions.

Due to security issues, Krakat was unable to tour the site prior to submitting VKES's bid, so he based the bid on drawings and information from Patriot. Upon beginning the

5

actual project, however, VKES learned that additional work would be required because a breaker that was supposed to have been installed already was not on site. As a result, two change orders were executed, one in the amount of $102,000 and another in the amount of $200,000. VKES negotiated the change orders with Spriggs and they were approved and signed by Ron White, Patriot's director of operations. The orders were then submitted to the MPO on or about April 28, 2016.

Months into the project, it became apparent that no one was doing the necessary fire alarm work. According to both Krakat and Spriggs, the fire alarm work was not included in VKES's original subcontract, but it was included in Patriot's general contract with the MPO. Spriggs asked VKES to do it and submit a ticket to bill Patriot. Spriggs also requested other additional work, with assurances that VKES would be paid after Patriot presented the invoices to the MPO. Krakat acknowledged that the tickets were not signed by Patriot, but said that, typically, a general contractor does not sign the tickets, and if he does, "it's just an acknowledgment that you did the work." Krakat testified that Spriggs did not make any assertion that a lack of signature would impact VKES's payment for the work. The additional work was completed and invoiced in July 2016.

From 2016 through 2019, there were numerous email communications sent between VKES and representatives of Patriot regarding payment for the completed work.

In February 2017, Krakat emailed Spriggs and White regarding payment for the ticket work. There was nothing communicated in response to suggest that VKES would not be paid. In August 2017, Spriggs assured VKES that although Patriot was not accustomed to paying subcontractors prior to receiving funds, "Patriot will honor all work

completed on the project and is fully aware of the challenges of working with this particular client." Neither Ron White nor Matthew Timbario, who were parties to the email communication, disputed that VKES would be paid or suggested that VKES had failed to meet a contractual requirement. Krakat testified that he understood that VKES's payment would be due once Patriot received payment from the MPO. In June 2018, Spriggs emailed Krakat, explaining that Patriot had to present the invoices to the MPO before payment but that it couldn't do so until another of its vendors finished some outstanding work. In July 2018, Krakat again emailed White and John Gilmore, a co-owner of Patriot. And in March 2019, Krakat yet again emailed White requesting payment. Krakat testified that at no point was he informed that VKES would not be paid for the ticket work.

In November 2019, Krakat understood, through an email from White, that Patriot was submitting all the change orders to the MPO for approval. Other email exchanges from November 2019 established that Patriot had received payment from the MPO in October but had not submitted VKES's tickets for payment.

In April 2020, Paul Bradford, Patriot's new project manager, contacted Krakat and advised him for the first time that Patriot did not intend to pay the remaining amount of approximately $65,000 due to VKES. Bradford stated in his email that Patriot believed VKES had already been paid for the work under the $200,000 change order and that the $200,000 charge was "not accurate" and "inflated," based on VKES's original quote. Bradford did not mention anything about the work not being properly authorized.

Dwayne Spriggs, Patriot's former project manager, testified on behalf of VKES that VKES's original base subcontract of $495,000 did not include fire alarm work, and that

7

the approximately $64,000 of ticket work performed by VKES, which included the fire alarm work, was necessitated by an "emergency situation." Specifically, Spriggs testified that the MPO directed that the work had to be addressed immediately. Because VKES was already on-site, Spriggs asked VKES to perform the work even though it was outside the scope of their contract. VKES agreed, and Spriggs understood that they would "track it, document it, and ... submit the paperwork to MPO, through Patriot, for a change order." According to Spriggs, Ron White reviewed all the pertinent information and was aware that Spriggs had directed VKES to perform the additional work. Spriggs described that at the time that VKES was being asked to complete the additional work, the project was under scrutiny because they were behind schedule and management was involved in the meetings and decision-making. Once the problem at the site was identified and the work completed by VKES, Spriggs thought it was understood that "all of that would be charged back to the client, via a change order from Patriot." He described that the discussion regarding VKES completing and being paid for the work was done onsite, with the MPO project manager present.

At the close of VKES's case-in-chief, Patriot moved for judgment, arguing primarily that the statute of limitations had run. Patriot asserted that the cause of action accrued when the services were rendered in 2016 and thus, VKES's complaint, which was filed in 2020, was after the applicable three-year statute of limitations had run. Patriot also repeated its argument that, under the pay-when-paid clause of the subcontract, because Patriot had never been paid for the disputed work it had no corresponding obligation to pay VKES. Finally, Patriot repeated its argument that VKES failed to meet the contract

8

provision to obtain signed authorizations for the additional work. The trial court denied the motion.

In Patriot's case-in-chief, Patriot owner John Gilmore testified that the requirement for written change orders is important because the government does not typically pay for work it has not approved. Gilmore stated that regarding emergency situations, "everyone in our company knows that you either have to call Matt [Timbario] or myself," and he had received no calls regarding emergencies on the project. In response to a question from the court, Gilmore confirmed that Patriot had been "paid completely for this project," including the electrical work performed by VKES. He clarified that Patriot had not been paid specifically for VKES's approximately $65,000 ticket work because Patriot had not submitted those invoices to the government for payment, even though the work was completed and was part of the benefit received by the government in the completion of the project.

At the close of all the evidence, Patriot renewed its motion for judgment, incorporating its earlier arguments. The trial court again denied the motion. Following closing arguments, the court ruled in VKES's favor:

> Spriggs was a senior project manager. That is why he was there. That was his job, to deal with the sub-contractors. Mr. White had, and was aware of just about everything that went on. These were direct agents of the Defendant. And in the email exchanges between VKES and Spriggs, it was really clear that there was apparent authority. Spriggs never said he needed approval.
>
> It just simply sounds like a failure of communication between Spriggs and his superiors, and time was always an issue here. I heard about blackouts, and power being down, and things had to be done in a timely fashion. So, I

9

can understand why some of that fell through the cracks, but the bottom line is, this Plaintiff did the work. He did the work and earned the pay.

This is an easy call for the Court. [Patriot was] very anxious to get paid. They submitted it to whoever was paying them without consideration of who was going to pay the Plaintiff in this case. And they would never have been paid if this electric work was not completed. It is simple. So, they were very generous with his money and his work product. They didn't hesitate, because they wanted to get paid the same as he wants to get paid.

This is such an easy decision for me. I think that [Patriot is] not only extremely unreasonable in not paying this contract, that if it had been argued, and if I had authority to do it, I would have ordered counsel fees in this case.

\* \* \*

So, this is an easy call. Judgment in favor of [VKES] for [$]64,575.09 with interest and costs. Thank you, all.

Written judgment was recorded on August 19, 2021. Patriot filed a timely notice of appeal.

## DISCUSSION

When a case has been tried without a jury, we "review the case on both the law and the evidence." MD. R. 8-131(c). We review questions of law without deference, but "give due regard to the trial court's role as fact-finder and will not set aside factual findings unless they are clearly erroneous." *Clickner v. Magothy River Ass'n Inc.*, 424 Md. 253, 266 (2012). We consider the evidence presented at trial in the light most favorable to the prevailing party. *Id*. If there is substantial evidence to support the trial court's determination, "it is not clearly erroneous and cannot be disturbed." *Id*. (quoting *Ryan v. Thurston*, 276 Md. 390, 392 (1975)).

10

## I.    CONDITION PRECEDENT

We turn first to Patriot's argument that VKES's claims should have been barred because VKES failed to meet a condition precedent to receiving payment. Patriot asserts that because the subcontract contained at least three explicit clauses stating that there would be no compensation for any work outside the contract in the absence of written authorization—and VKES admitted that it did not receive written authorization to perform the ticket work—Patriot should not be liable for payment for that work. At trial, VKES did not dispute the subcontract's language, but countered that the condition precedent was waived by the parties' actions. The trial court found that Patriot's representative, Duane Spriggs, had acted with apparent authority and waived the written authorization requirement. We agree.

A condition precedent is "'a fact, other than a mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'" *Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.,* 165 Md. App. 262, 273 (2005) (quoting *Chirichella v. Erwin,* 270 Md. 178, 182 (1973)). In other words, "'where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused.'" *All State Home Mortg., Inc. v. Daniel,* 187 Md. App. 166, 182 (2009) (quoting *Pradhan v. Maisel,* 26 Md. App. 671, 677 (1975)).

Nonetheless, "[p]arties to a contract may waive the requirements of the contract by subsequent oral agreement or conduct, notwithstanding any provision in the contract that

11

modifications must be in writing." *Kline*, 165 Md. App. at 277. In considering whether waiver or modification of a contract has occurred, courts "look to the totality of a party's actions." *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122 (2011). *See also Taylor v. Univ. Nat'l Bank*, 263 Md. 59, 63 (1971) ("the conduct of parties to a contract may be evidence of a subsequent modification of their contract"). Waiver or modification of an agreement may be established by a preponderance of the evidence, and "'[w]hether or not the subsequent conduct of the parties amounts to a waiver is a question of fact to be decided by the trier of fact.'" *Kline*, 165 Md. App. at 278 (quoting *Hoffman v. Glock,* 20 Md. App. 284, 289 (1974)).

The evidence presented at trial showed that Spriggs, Patriot's project manager, approached VKES about putting in a bid for the electrical work on the project after the first subcontractor was unable to complete the job. Spriggs then negotiated the terms of the subcontract with VKES, and then and thereafter, Spriggs was the only person with whom VKES had any direct contact regarding the day-to-day work on-site. VKES performed the fire alarm and other ticket work at Spriggs's specific direction on an emergency basis after the MPO declared the work had to be completed immediately.

Even if Spriggs did not have actual authority to bind Patriot in relation to its subcontractor's work, the modification of a contract by an agent who lacks actual authority may nonetheless be enforceable against the principal if the agent acts with apparent authority. *See Dickerson v. Longoria*, 414 Md. 419, 442 (2010) ("In the absence of actual authority, a principal can be bound by the acts of a purported agent when that person has apparent authority to act on behalf of the principal. Apparent authority results from certain

12

acts or manifestations by the alleged principal to a third party leading the third party to believe that an agent had authority to act."); *Penowa Coal Sales Co. v. Gibbs & Co.*, 199 Md. 114, 119 (1952) ("[A]s between the principal and third persons, the mutual rights and liabilities are governed by the scope of the agent's apparent authority, which is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny."). Whether Spriggs was Patriot's agent for purposes of waiving terms of the subcontract "is a factual determination that we review using the clearly erroneous standard." *Dickerson*, 414 Md. at 433.

Patriot claims that there was no waiver of the condition precedent because Spriggs did not have the authority to waive or modify the contract's provisions. The trial court disagreed, however, and was persuaded that there were sufficient facts to find that Spriggs acted with apparent authority. Moreover, the trial court was persuaded that Patriot and VKES waived the written authorization requirement by their actions:

> Spriggs was a senior project manager. That is why he was there. That was his job, to deal with the subcontractors ... And in the email exchanges between VKES and Spriggs, it was really clear that there was apparent authority. Spriggs never said he needed approval.

The trial court also pointed out that "you had White and Spriggs there for a reason, right? Why else would they have been there? To deal with issues like this. They were agents of Patriot." As to Spriggs's apparent authority to authorize VKES's work, the trial court noted that the ticket work was not a one-time situation. Instead, "[t]his was ongoing, and everyone knew this work was being done, and condoned it," especially as "things

13

developed spontaneously, time was of the essence" in completing the additional work. Moreover, in addition to the ticket work, Spriggs also directed VKES to perform the additional work that was subject to the change orders that were executed by Patriot and accepted by the MPO, evidencing his authority to act on behalf of Patriot.

Then, after the ticket work was completed, Patriot assured VKES on several occasions that it was going to submit the ticket work invoice to the MPO and that VKES would be paid for the work. At no time did anyone from Patriot mention that written authorization was lacking. Even when Bradford, who took over project management for Patriot in 2020, notified VKES it would not be paid, the reason given was not that the work had not been authorized properly but that Patriot believed VKES had inflated the price and thus had already been compensated sufficiently for its work.

For all these reasons, we cannot say that the trial court clearly erred in determining that Spriggs had at least apparent authority to direct VKES to perform work outside the subcontract in the absence of written authorization. There was also significant evidence presented for the trial court to conclude, by a preponderance of the evidence, that Spriggs, with at least apparent authority, waived the condition precedent that work outside the subcontract was required to be approved in writing. We, therefore, conclude that the trial court did not err in finding that the condition precedent in the subcontract was not a bar to VKES's recovery of damages.

## II. STATUTE OF LIMITATIONS

Patriot next contends that the trial court erred in concluding that VKES's lawsuit was not barred by the three-year statute of limitations. Patriot claims that the statute of

14

limitations began to run when VKES completed its work in July 2016, and thus, the complaint filed in June 2020 was too late. VKES disagrees, asserting that in light of the pay-when-paid clause in the subcontract, the statute of limitations did not begin to run until sometime in late 2019 when the MPO paid Patriot, but Patriot refused to pay VKES.[1]

Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. MD. CODE, COURTS & JUDICIAL PROCEEDINGS ("CJ") § 5-101. Contract actions are generally governed by Maryland's three-year statute of limitations. *Kumar v. Dhanda*, 198 Md. App. 337, 342-43 (2011). "As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725 (1991). Ordinarily, "'the question of accrual in [CJ] § 5-101 is left to judicial determination,' unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000)).

---

[1] The trial court rejected Patriot's argument that the pay-when-paid clause did not apply because Patriot never submitted VKES's outstanding invoices to the MPO and was thus never paid for them. We similarly reject this argument on appeal. When a party to a contract contributes to the non-occurrence of the condition precedent, a trial court may apply the "prevention doctrine" to waive the condition precedent. The prevention doctrine is a generally recognized principle of contract law that states if one party to a contract "hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused." *WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 267 (2018) (quoting 13 Richard A. Lord, *Williston on Contracts* § 39:3, at 569 (4th ed. 2013)). There was sufficient evidence presented to support the implicit finding that, under the prevention doctrine, Patriot was liable to VKES for payment notwithstanding the alleged failure to fulfill the "pay-when-paid" clause in the subcontract.

The test to be utilized in fixing the accrual date of a cause of action "is to ascertain the time when [the complaining party] could have first maintained [its] action to a successful result." *Kumar v. Dhanda*, 426 Md. 185, 194 (2012) (quoting *James v. Weisheit,* 279 Md. 41, 44 (1977)); *accord Henry's Drive-In, Inc. v. Pappas*, 264 Md. 422, 428 (1972) ("[L]imitations will run from the time the plaintiff could have acted."). "In Maryland, a cause of action for breach of contract accrues when the contract is breached, and when 'the breach was or should have been discovered.'" *Boyd v. Bowen,* 145 Md. App. 635, 669 (2002) (quoting *Jones v. Hyatt Ins. Agency, Inc.,* 356 Md. 639, 648 (1999)).

Here, the question is whether the three-year statute of limitations began to run when VKES completed its work on the project and invoiced Patriot in July 2016, or whether, due to the condition precedent of the pay-when-paid provision in the subcontract, the statute of limitations began to run when Patriot was paid by the MPO for the general contract but refused to pay VKES, sometime in late 2019. Resolution of this question depends on the interpretation of the pay-when-paid clause in the subcontract, which provides:

> PAY-WHEN PAID PROVISION: PATRIOT CONSTRUCTION receipt of payment from OWNER is a CONDITION PRECEDENT to PATRIOT Construction's payment obligation hereunder and the source of such payment.

The interpretation of a contract is a legal question that we review without deference to the decision of the trial court. *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 392 (2019).

Normally, "unless the contract provides otherwise, a cause of action for extra labor and services accrues when the work is done or services provided." *Mayor & Council of*

16

*Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 157 (1975). Patriot argues that, under this principle, the statute of limitations began as soon as VKES completed the ticket work. But, "it is also true that when the contract requires some action, such as an accounting, a billing or a hearing, by one or both of the parties before the obligation for payment fully blossoms, then the performance of that activity is 'a condition precedent to recovery of such payments, absent bad faith or collusion.'" *Id.* (quoting *Laurel Race Course v. Regal Constr.*, 274 Md. 142, 150 (1975)). VKES argues that under this principle, the statute of limitations did not begin until the contract's condition precedent—the pay-when-paid clause—was satisfied.

Running the three-year statute of limitations from the date VKES's work was complete, as Patriot urges, is inconsistent with the pay-when-paid clause of the contract. Due to the pay-when-paid clause, VKES could not maintain its action against Patriot until the MPO paid Patriot for the work on the project, but Patriot refused to pay VKES. Had VKES ignored the pay-when-paid provision and brought this action within three years of its completion of the work, Patriot could have—and likely would have—moved to dismiss by virtue of the non-occurrence of the subcontract's condition precedent that it had not yet been paid by the MPO. Regardless of how much time had passed since the completion of the work, the breach of contract did not occur until Patriot was paid by the MPO. We hold, therefore, that the pay-when-paid provision of the contract was a condition precedent to VKES's ability to seek payment and thus the statute of limitations did not begin to run until

17

that condition was satisfied.[2] As a result, the trial court properly found that the statute of limitations did not bar VKES's lawsuit.

## III.   PAROL EVIDENCE REGARDING SCOPE OF SUBCONTRACT

Patriot next asserts that, because the contract language was unambiguous, the trial court erred in admitting prejudicial parol evidence regarding the terms of the contract. Under the objective theory of contract interpretation utilized by Maryland courts, if the language of a contract is unambiguous, the intent of the parties is "based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation." *Credible Behav. Health*, 466 Md. at 393 (cleaned up). It is only when a contract's language is determined to be ambiguous that a "court is entitled to consider extrinsic or parol evidence to ascertain the parties' intentions." *Id*. Patriot argues that, because the trial court made no findings that the language of the subcontract was ambiguous, it should not have considered the testimony of Krakat and Spriggs regarding their subjective understanding of whether the fire alarm work was or was not within the scope of VKES's subcontract. Patriot alleges that the terms of the subcontract unambiguously included the fire alarm work. VKES

---

[2] Other jurisdictions have held similarly. *See, e.g.*, *Shelter Mut. Ins. Co. v. Nash*, 184 S.W.3d 425, 428 (Ark. 2004) ("In ordinary contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action" and "if the right of action depends upon some contingency or a condition precedent, the cause of action accrues and the statute of limitations begins to run when the contingency occurs or the condition precedent is complied with."); *JC Ryan EBCO/H&G, LLC v. Lipsky Enters., Inc.*, 78 A.D.3d 788, 789-90, (N.Y.S. 2010) (the limitations clause in the subcontract conflicts with the pay-when-paid clause because the subcontractor's right to bring an action against the contractor might not ripen until after the expiration of the limitations period).

18

counters, first, that the testimony was not parol evidence because it was not offered to explain, vary, or contradict the language of the subcontract, only to state that the fire alarm work did not fall within the terms of the subcontract. Second, VKES asserts that Patriot did not preserve the issue because it did not object each time it was addressed at trial and itself elicited testimony from the witnesses about whether the ticket work was outside the scope of the subcontract. We agree with VKES that the issue was not preserved, thus we need not reach the correct scope of the parol evidence rule.

Patriot points to several instances in which it objected to the trial court's admission of what it claimed was parol evidence about whether fire alarm work was included in VKES's subcontract. As VKES points out, however, there were also several instances in which such testimony was admitted without objection by Patriot. And indeed, Patriot's own attorney questioned the witnesses about whether the fire alarm work was part of the original subcontract. Patriot asked Krakat whether it was his position that "you didn't have to do any fir[e] alarm work ... in the contract" and that he "didn't agree to do any of that," to which Krakat responded, "No." Patriot also showed Spriggs VKES's invoice for the fire alarm work and asked, "[T]he work that VKES performed, was this outside of its base contract work, sir?" Spriggs responded, "Yeah, this was outside of the base contract."

A claim of error in the admission of evidence is "waived if, at another point during the trial, evidence on the same point is admitted without objection." *DeLeon v. State,* 407 Md. 16, 31 (2008). *See also Yates v. State,* 429 Md. 112, 120 (2012) ("Where competent evidence of a matter is received, no prejudice is sustained where other objected to evidence of the same matter is also received.") (cleaned up); *Berry v. State,* 155 Md. App. 144, 172

19

(2004) ("The failure to object as soon as the ... evidence was admitted, and on each and every occasion at which the evidence was elicited, constitutes a waiver of the grounds for objection."). Because the alleged parol evidence about which Patriot complains was received without objection on several occasions, and elicited by Patriot itself on more than one occasion, Patriot has waived the issue.

## IV.   MARYLAND RULE 2-522(A)

Patriot next asserts that the trial court's ruling in favor of VKES was "nearly devoid of any factual or legal findings concerning the issues raised by the parties" in violation of Rule 2-522(a), and thus the case should be remanded for a new trial. We disagree.

Maryland Rule 2-522(a) requires that "[i]n a contested court trial, the judge, before or at the time judgment is entered, shall prepare and file or dictate into the record a brief statement of the reasons for the decision and the basis of determining any damages." MD. R. 2-522(a); *see also* PAUL V. NIEMEYER & LINDA M. RICHARDS, MARYLAND RULES COMMENTARY 573 (5th ed. 2014) ("In a case tried to the court without a jury, the court must make a decision and give its reasons for the decision ... and the basis for determining the damages, if any. A failure to comply with this requirement may result in a remand."). There is no violation of the rule where the court clearly articulated the rationale behind its decision. *See Viamonte v. Viamonte*, 131 Md. App. 151, 162 (2000) ("[Rule 2-522(a)] simply requires the [court] to explain, at or before the time judgment is entered, her reasons for making her decision.").

The present case included a hearing on Patriot's motion to dismiss and a two-day trial on the merits. During both, Patriot raised essentially the same defenses and the trial

20

court sufficiently articulated the rationale for its decisions. Throughout the motions hearing and the trial (which included a ruling on Patriot's motion for judgment), the court thoroughly detailed the background information, which provided the factual predicate for its decisions that: (1) Spriggs, as senior project manager, operated as an authorized agent of Patriot when he directed VKES, with White's knowledge, to complete the disputed ticket work on an emergency basis; (2) the continuing course of conduct between VKES and Spriggs, the only Patriot agent with whom VKES interacted during the pendency of the project, served as a waiver of the condition precedent that authorization for all additional work be in writing; (3) VKES had satisfactorily completed the work for which it invoiced Patriot; and (4) after performing the work in a timely fashion, VKES was entitled to payment for that work under the terms of the subcontract, especially as Patriot had been paid by the MPO for the entire general contract. Ultimately, the court determined that "the bottom line is, this Plaintiff did the work. He did the work and earned the pay" and that Patriot was "extremely unreasonable in not paying this contract."

The court's factual findings and legal conclusions at the end of the trial, while spare, were not so summarily articulated as to prevent us from adequately assessing the cogency of its conclusion or the reasonableness of its remedy. *See Prahinski v. Prahinski*, 75 Md. App. 113, 136 n.6 (1988) (holding that "a trial court is not required to articulate each step

21

in its thought process"). We conclude, therefore, that the trial court sufficiently complied with Rule 2-522(a).[3]

## V.     MOTION TO DISMISS

Finally, we address Patriot's contention that the trial court erred in denying its pretrial motion to dismiss VKES's complaint for failure to state a claim.

As an initial matter, we note that Maryland's appellate courts have not yet addressed whether a party may appeal from the denial of a motion to dismiss for failure to state a claim or whether success at trial on the merits of an issue renders such an appeal moot. In the absence of clear direction from the Supreme Court, we assume without deciding that such an order is appealable and proceed to the merits.[4]

---

[3] We also note that, even if we agreed with Patriot that the trial court did not comply with Rule 2-522(a), the remedy would be a remand for a more comprehensive articulation of the facts and reasoning underlying its ruling on this issue, not, as Patriot argues, a remand for a new trial. *See Shum v. Gaudreau*, 322 Md. 242, 243-44 (1991).

[4] It is Patriot's view that the circuit court erred in denying its motion to dismiss and that it should be able to test the legal sufficiency of VKES's complaint despite its loss at trial. In support of this, Patriot points to Maryland Rule 8-131(e), which provides—without qualification—that "[a]n order denying a motion to dismiss for failure to state a claim upon which relief can be granted is reviewable only on appeal from the judgment." MD. R. 8-131(e); *see also Planning Bd. of Howard Cnty. v. Mortimer*, 310 Md. 639, 653-54 (1987) (explaining that the denial of a motion to dismiss "merely maintains the status quo of the litigation and … is inherently an interlocutory order"); *City of Dist. Heights v. Denny*, 123 Md. App. 508, 518-19 (1998) (noting that "the denial of [a] motion to dismiss [does] not constitute a final judgment on the merits"). VKES, by contrast, argues that by prevailing at trial it has demonstrated that relief on its claim can, in fact, be granted, and the appeal of the issue should now be moot. In support of this, VKES points us to significant out-of-state authority, *see, e.g.*, *Bennett v. Pippin*, 74 F.3d 578, 585 (5th Cir. 1996) (reasoning that "[w]hen the plaintiff has prevailed after a full trial on the merits, a [trial] court's denial of a [motion to dismiss for failure to state a claim] becomes moot. The plaintiff has proved, not merely alleged, facts sufficient to support relief. Any pleading defect may be cured by

22

We review the grant or denial of a motion to dismiss to determine whether the trial court was legally correct. *Blackstone v. Sharma*, 461 Md. 87, 110 (2018); *Myers v. State*, 248 Md. App. 422, 430-31 (2020). "'A motion to dismiss for failure to state a claim tests the sufficiency of the pleadings.'" *Iglesias v. Pentagon Title & Escrow, LLC*, 206 Md. App. 624, 644 (2012) (quoting *Afamefune v. Suburban Hosp., Inc.*, 385 Md. 677, 681-82 n.4, (2005)). In such a motion, the defendant asserts that "'despite the truth of the allegations, the plaintiff is barred from recovery as a matter of law.'" *Id*. at 644-45 (quoting *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 414 (2003)). When we review the trial court's decision, we must assume the truth of all well-pleaded facts and allegations contained in the complaint, and view those facts, as well as all inferences that may reasonably be drawn from them, in the light most favorable to the non-moving party. *Greater Towson Council of Cmty. Assoc. v. DMS Dev., LLC*, 234 Md. App. 388, 408 (2017). An order granting dismissal is appropriate "'only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff.'" *Id*. (quoting *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 142 (2012)).

In its motion to dismiss, Patriot relied on the same grounds that it later argued at trial and that it has now also presented on appeal—that VKES's complaint fails to state a

a motion … and the sufficiency of the plaintiff's evidence may be tested by an appeal on that issue"); *Denali Real Estate, LLC v. Denali Custom Builders, Inc*., 926 N.W.2d 610, 621 (Neb. 2019) (In matter of first impression, "[w]e hold that generally, the denial of a motion to dismiss ... becomes moot after trial"), although we have some questions about whether the appellate systems in those jurisdictions are, in relevant respects, analogous. A definitive resolution of this interesting, if unusual, question is a matter for the Supreme Court of Maryland, either through its adjudicative or its rulemaking function.

claim and should have been dismissed because of the failure to satisfy the condition precedent in the contract and that the suit was filed beyond the statute of limitations. Thus, although we have already discussed both questions at length, we will briefly address them once more.

In its complaint, VKES alleged that in addition to the initial subcontract work and the two formal change orders, "VKES performed certain additional work on a time and material work ticket[] outside of the scope of the Subcontract and Change Order work" in a timely and workmanlike manner and that Patriot and the MPO accepted the work but refused to pay. VKES specified that it had "satisfied all conditions precedent, or those conditions have been waived, for initiating this action and VKES may now pursue its cause of action in this Court." Patriot argues that VKES's assertion that any condition precedent had been satisfied or waived is too conclusory to overcome the motion to dismiss. The trial court disagreed, as do we.

Patriot asserted that VKES had failed to satisfy the condition precedent of written authorization for the first time in its motion to dismiss. Until shortly before the filing of its complaint, VKES believed Patriot would pay the ticket work when the MPO paid Patriot. When VKES was eventually notified that it would not be paid, the reason given was that the outstanding invoices had been covered by the "inflated" $200,000 change order. It would be illogical to expect VKES to have alleged more specific facts in response to a defense that had not yet been raised and of which it was unaware. Patriot's motion to dismiss did not show a legal deficiency in VKES's complaint, but rather that the

24

satisfaction of the condition precedent was a disputed fact. The trial court was thus legally correct in denying the motion to dismiss for failure to state a claim.

Finally, we note that "a motion to dismiss ordinarily should not be granted by a trial court based on the assertion that the cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Litz v. Md. Dep't. of Env't*, 434 Md. 623, 641 (2013). As we have already discussed, due to the pay-when-paid provision of the contract, the statute of limitations did not begin to run until Patriot was paid by the MPO in October 2019. Thus, VKES's complaint, filed in June 2020, was well within the three-year statute of limitations and the trial court properly denied the motion to dismiss on the grounds that it was time-barred.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**